[No. B103103. Second Dist., Div. Four. May 5, 1998.]

INTERNATIONAL ENGINE PARTS, INC., et al., Plaintiffs and Appellants, v.
FEDDERSEN AND COMPANY, Defendant and Respondent.

## Counsel

Thomas Kallay and Robert H. Pourvali for Plaintiffs and Appellants.

Garrett & Tully, Stephen J. Tully and Kevin S. Lacey for Defendant and Respondent.

## OPINION

CZULEGER, J.*—Appellants International Engine Parts, Inc., and its principals appeal from the trial court's granting of respondent Feddersen and Company's motion for summary judgment. Summary judgment was granted in favor of respondent on grounds that the doctrine of judicial estoppel precluded appellants from raising in this action that which appellants had earlier failed to acknowledge in a bankruptcy action even existed. For the reasons stated below, we affirm.

### PROCEDURAL BACKGROUND

This case has a long and tortured history. A previous grant of respondent's motion for summary judgment on an unrelated statute of limitations issue was affirmed by this court but reversed by the California Supreme Court in *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279]. After remand to the trial court, respondent again filed a motion for summary judgment. This second motion for summary judgment alleged that appellants should be estopped from raising their claim because appellants, having filed for bankruptcy protection, failed to disclose to the bankruptcy court the existence of their negligence claim against respondent. Furthermore, appellants had earlier contended that the injury allegedly caused by respondent was caused, in fact, by the negligence of appellants' own chief financial officer. Respondent also argued in their motion for summary judgment that the acts and omissions alleged against it were not the legal cause of the damage, were not relied upon by appellants and that there is no genuine issue as to these material facts.

At the hearing on respondent's motion, the discussion and pleadings focused virtually entirely on the issue of judicial estoppel and the effect of the then recently published opinion in *Billmeyer* v. *Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086 [50 Cal.Rptr.2d 119] on that topic. After asking for further briefing on the issue and taking the matter under submission, the trial court granted summary judgment for respondent. The court found, inter alia, that the application of the doctrine of judicial estoppel warranted the granting of the motion.

Judgment was entered in favor of respondent and appellants filed a timely notice of appeal.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## STATEMENT OF FACTS

In essence, this lawsuit is about allegations of accounting malpractice against respondent. Appellants hired respondent, an accounting firm, in the late 1970's to perform accounting services. Respondent prepared and filed appellants' 1983 and 1984 tax returns. Appellants sought to take advantage of certain favorable tax treatments available to domestic international stock corporations. However, no one prepared and filed the documents necessary to obtain the necessary tax treatment during those years. A 1985 audit by the Internal Revenue Service (IRS) revealed the omission, which resulted in an assessment of several hundred thousand dollars in additional tax for appellants. Appellants allege that respondent negligently forgot or missed the required filings. Respondent contends that appellants were explicitly told of the requirements and failed to take appropriate actions.

Unrelated to the tax problem, appellants filed for bankruptcy protection in September 1984. For several years thereafter, nothing of consequence to this appeal occurred. However, in 1989 appellants filed with a bankruptcy court a motion to reject an executory contract between the company and Carol Ann Ziehler. Ziehler had been the vice-president and chief financial officer for appellants. She was terminated in December 1985 and filed a lawsuit against appellants arising from this termination. The bankruptcy court gained jurisdiction over that lawsuit as well. In their motion, appellants argued to the bankruptcy court that Ziehler had handled the company's accounting, which was then subject to the IRS audit, "in such a dilatory fashion that the IRS imposed a federal corporate income tax liability in excess of $400,000 for the years for which she was responsible . . . ." Additional unrelated allegations were made against Ziehler in the pleading. The bankruptcy court granted the motion and disallowed the Ziehler contract. The lawsuit was subsequently settled and the settlement approved by the bankruptcy court in October 1989.

Then on January 19, 1990, appellants filed their second amended disclosure statement with the bankruptcy court. The purpose of the disclosure statement was to provide claimants with adequate and accurate information upon which they could rely in deciding whether to vote to accept or reject appellants' plan of reorganization which had been filed in December 1989. The disclosure statement listed the Ziehler lawsuit, the fact that it had been settled, and that appellants' motion to set aside the executory contract had been granted. It also listed respondent as the appellants' accounting firm with no fees due and owing to it and that respondent continued to provide accounting services to assist appellants during the bankruptcy proceedings. Finally, under subsection E entitled "Litigation," appellants stated: "Debtor

is not a Plaintiff or Defendant in any pending actions, except as set forth herein, . . . *and no other action is currently contemplated.*" Nowhere in that disclosure statement was respondent named as a potential defendant in a lawsuit. The statement was approved by the bankruptcy court.

On April 4, 1990, appellants made application to the bankruptcy court to borrow money and pay claims. In that pleading, appellants again stated that "no further claims litigation is anticipated."

On May 11, 1990, appellants filed their modification to debtor's second amended disclosure statement. In that filing, appellants modified subsection E of its second amended disclosure statement to now include, "the Debtor reserves the right to bring claims . . . on causes of action arising pre or post-petition which are currently under investigation." There was no specific reference to any potential litigation involving respondent and respondent's name was not mentioned otherwise.

Four days later, on May 15, 1990, appellants filed their amended modification of second amended plan of reorganization. Again, no reference was made to any contemplated litigation involving respondent.

However, on that very same day, May 15, 1990, appellants filed their complaint for damages for professional malpractice against respondent. The complaint alleged, inter alia, that respondent breached its professional duties by negligently failing to advise appellants of their obligation to prepare and file necessary documentation to obtain favorable tax treatment. It further alleged that respondent continued to work for appellants and therefore should have become aware that the appropriate documentation had not been prepared and should have taken actions to remedy the situation.

On July 18, 1990, the bankruptcy court confirmed appellants' plan of reorganization. There was no mention of the instant lawsuit.

## ISSUES PRESENTED

Is appellants' action barred by the doctrine of judicial estoppel?

## DISCUSSION

■ Appellants argue on appeal that judicial estoppel is a doctrine that does not by fact or law apply to this case. They submit that the lawsuit, already long delayed by the need to appeal to the California Supreme Court, should be heard on the merits and that a rule of equity should not be invoked

to halt any otherwise meritorious claim. Respondent replies that appellants have played fast and loose with the facts in the bankruptcy litigation and the integrity of the judicial system is at stake here. According to respondent, neither the trial court nor this court should countenance the type of activity engaged in by appellants in the other judicial proceeding.

 The concept of judicial estoppel prevents a party from asserting a position in a judicial proceeding that is contrary or inconsistent with a position previously asserted in a prior proceeding. The purpose is to protect the integrity of the judicial process and not the parties of the lawsuit. (*Jackson* v. *County of Los Angeles* (1997) 60 Cal.App.4th 171, 181 [70 Cal.Rptr.2d 96].) " 'The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process. See 1B *Moore's Federal Practice* ¶ .405[8], at 238-42 (2d Ed. 1988). "The policies underlying preclusion of inconsistent positions are 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings.' " *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1215 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985) (citations omitted). Judicial estoppel is "intended to protect against a litigant playing 'fast and loose with the courts.' " *Rockwell International Corp. v. Hanford Atomic Metal Trades Council*, 851 F.2d 1208, 1210 (9th Cir. 1988) (citations omitted). Because it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion. . . . Judicial estoppel is most commonly applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one. [Citations.]' " (*Russell* v. *Rolfs* (9th Cir. 1990) 893 F.2d 1033, 1037, citing *Religious Tech. Ctr., Ch. of Scientology* v. *Scott* (9th Cir. 1989) 869 F.2d 1306, 1311 (dis. opn. of Hall, J.).)

California courts have utilized the concept of judicial estoppel and have followed the rule laid down in *Oneida Motor Freight, Inc.* v. *United Jersey Bank* (3d Cir. 1988) 848 F.2d 414. In that case, the federal court held that where a debtor in bankruptcy violates its statutory and fiduciary duty to disclose a current claim during a bankruptcy proceeding, equitable and judicial estoppel operate as a bar to further litigation by the debtor. (*Conrad* v. *Bank of America* (1996) 45 Cal.App.4th 133, 137-138 [53 Cal.Rptr.2d 336].) In explaining the difference between equitable and judicial estoppel, the court in *Oneida Motor Freight* stated that judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection

between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." (*Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d at p. 419.) "Consequently, judicial estoppel is especially appropriate where a party has taken inconsistent positions in separate proceedings." (*Jackson* v. *County of Los Angeles, supra,* 60 Cal.App.4th at p. 181.)

As the primary purpose of the doctrine of judicial estoppel is not to protect the litigants but to protect the integrity of the judiciary, the doctrine does not require reliance or prejudice before it may be invoked. (*Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th at p. 1092.)

Judicial estoppel is an equitable doctrine with some vagueness in its application. (*Coleman* v. *Southern Pacific Co.* (1956) 141 Cal.App.2d 121, 128 [296 P.2d 386].) It is a doctrine invoked by courts in their discretion. (*Yanez* v. *U.S.* (9th Cir. 1993) 989 F.2d 323, 326.) However, ". . . the doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citations.]" (*Jackson* v. *County of Los Angeles, supra,* 60 Cal.App.4th at p. 183.)

Applying the above principles to the facts of this case, it is important to start out by commenting on the prior judicial proceeding at issue in this case—appellant company's bankruptcy case. It is a long-standing tenet of bankruptcy law that one seeking the benefits of protection under the bankruptcy law has a concomitant duty to disclose to the creditors all of the debtor's interests and property rights without limitation. (*Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d at p. 416.) Pursuant to 11 United States Code section 521(1) of the Bankruptcy Code, the debtor is required to "file . . . a schedule of assets and liabilities . . . and a statement of the debtor's financial affairs[.]" The information must be adequate and that "means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor . . . that would enable a hypothetical reasonable investor . . . to make an informed judgment about the plan [of reorganization]." (11 U.S.C. § 1125(a)(1).) Included in the information subject to mandatory disclosure is the possibility of any litigation likely to arise in a nonbankruptcy context. (*Hay* v. *First Interstate Bank of Kalispell, N.A.* (9th Cir. 1992) 978 F.2d 555, 557; *Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d at p. 417.)

Was the court below correct in concluding that judicial estoppel precludes appellants from bringing an action based on an inconsistent position? A review of the record of this case supports its ruling.

As early as 1985, four years before the filing of the statement in bankruptcy at issue, appellants thought that respondent was responsible for the failure of the company to obtain favorable tax treatment by the IRS. In his deposition, the president of appellant International Engine Parts testified that in 1985, at the time of the Ziehler lawsuit, he discussed with others in the company the responsibility which respondent bore for appellant's tax problems. Ziehler herself, at the time of her firing in 1985, blamed respondent for the IRS disqualification and told that to appellants. Others had the same opinion, felt respondent was negligent, and related that to appellant company's president.

The president, while aware of respondent's potential liability, intentionally chose not to take any action at the time and not to disclose it in the bankruptcy proceedings. In connection with the bankruptcy court motion regarding the Ziehler contract, appellant company's president was asked why respondent's potential liability was not mentioned. The following exchange then occurred between counsel for respondent and the president of International Engine Parts:

"By Mr. Tully [counsel for respondent]:

"[Question]: Is it correct to say that you didn't think it would be of benefit to you when you signed this declaration to advise the judge that you felt that Feddersen & Company, along with Ms. Ziehler, had some responsibility for the disqualification of the D.I.S.C. [tax treatment]?

"[Answer]: If I can answer it in my own words, at the time I was preparing this, I was informed to only explain in my own words that Ann Ziehler's responsibilities to the corporation were and *not to bring in anyone else's responsibilities because there would be objections brought to that point as to her being a co-conspirator* or whatever you want to call it.

"[Question]: Who told you that?

"[Answer]: Both my attorneys and my—" (Italics added.)[1]

What is clear from this and other exchanges is that appellants were aware of the potential claim against respondent but intentionally chose not to

---

[1] Further questioning was cut off because of the attorney-client privilege. The attorneys that represented appellants in the bankruptcy action were the same as those that subsequently filed the complaint in this matter.

disclose it in 1989 in connection with their motion before the bankruptcy court.

More importantly, in deciding whether the doctrine of judicial estoppel applies, we are struck by the multiple subsequent failures to disclose the potential action against respondent, all in violation of the requirements of the rules of bankruptcy. As set forth above, there is a good reason for creditors in bankruptcy to expect the debtor will disclose potential litigation. The law and fairness demand such disclosure. Creditors and the bankruptcy court must rely on the integrity of the debtors in order for the bankruptcy system to successfully function. But in the face of their obligations, appellants, while raising issues about negligent accounting practices in the bankruptcy proceeding, failed at every opportunity to disclose the exact claim which they now seek to pursue in the instant lawsuit. Certainly the creditors and the bankruptcy court had the right to know that appellants held not only Ziehler but also respondents responsible for hundreds of thousands of dollars in extra taxes and would seek to be made whole by the lawsuit at issue here.

Appellants for years knew of respondent's potential liability. Appellants did not disclose it in the bankruptcy proceeding. They did, on the other hand, seek to affix blame on Ziehler when such a course of conduct seemed advantageous. They were successful in obtaining the relief they sought from the bankruptcy judge and successfully concluded bankruptcy without ever being forced to disclose their claim against respondent.[2] Appellants were fully aware of their claim and did not act under ignorance, fraud, or mistake. The elements of the doctrine of judicial estoppel, therefore, appear to be present.

But the doctrine of judicial estoppel is equitable in nature and appellants argue that their failure to disclose their claim and wait five years before filing a lawsuit against respondent was based upon their restraint in hopes of resolving the problem. They therefore should not be punished because of their admirable forbearance. Appellants also argue that they did not act in bad faith and that their failure did not affect the bankruptcy proceedings.

The problem with appellants' arguments are that they fail to fully appreciate the purpose of the doctrine of judicial estoppel. The doctrine is intended to protect the orderly administration of justice and the integrity of

---

[2]An argument may be made that if appellants were allowed to continue with their action, the creditors from the long ago closed bankruptcy case could seek to reopen the bankruptcy on the theory that the debtor, by failing to disclose a potentially valuable asset, committed fraud on the creditors in bankruptcy. Because of our resolution of this matter, we need not ponder that question for long.

all judicial proceedings. (*Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 937 [62 Cal.Rptr.2d 142]; *Rissetto* v. *Plumbers and Steam-fitters Local 343* (9th Cir. 1996) 94 F.3d 597, 601.) While it is equitable in nature, it seeks to protect the soundness of proceedings in a wide range of cases beyond just bankruptcy. *(Law Offices of Ian Herzog* v. *Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 678-679 [71 Cal.Rptr.2d 771] [arbitration matters]; *Jackson* v. *County of Los Angeles, supra,* 60 Cal.App.4th 171, [workers' compensation claim]; *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842 [21 Cal.Rptr.2d 642] [dissolution of marriage]; *Alexander* v. *Hammarberg* (1951) 103 Cal.App.2d 872 [230 P.2d 399] [tort action]; *Russell* v. *Rolfs, supra,* 893 F.2d 1033 [habeas corpus petition].)

Under appellants' theory, litigants in another proceeding can be less than accurate in their representations if done to facilitate settlement. Furthermore, according to appellants, they should not be subject to imposition of the doctrine of judicial estoppel if their actions were not taken with an evil motive or were of no consequence to the underlying proceeding. We cannot agree. Full, truthful disclosures in judicial or administrative proceedings are important in and of themselves. Regardless of whether the motive was pure or the effects of the falsehood inconsequential, we must expect honesty and frankness in all judicial and administrative proceedings from parties that choose to bring lawsuits in our courts.

It is not the part of the state courts to act as guarantors of honesty and full disclosure in every sister court or administrative proceedings. However, where parties to an action pending in our courts have been properly shown to have been less than sufficiently forthcoming in another tribunal, the doctrine of judicial estoppel is available to maintain the integrity of our judicial system. While the exercise of that equitable power should be done with great circumspection, it is a powerful tool to encourage litigants to be mindful of the need to employ the full and complete truth regardless of transitory needs of a particular proceeding.

■■■ . The determination of the existence of judicial estoppel is a factual finding which will be upheld if supported by substantial evidence. (*In re Marriage of Dekker, supra,* 17 Cal.App.4th at p. 850.) ■■■ As provided above, there is substantial evidence to support the lower court's finding that the doctrine of judicial estoppel should be invoked. Appellants' action cannot be allowed to proceed in light of the positions they took in the bankruptcy action. Respondent's motion for summary judgment was therefore properly granted.

## DISPOSITION

The judgment of the superior court is affirmed.

Epstein, Acting P. J., and Hastings, J., concurred.