Filed 10/27/15  Manookian v. Union Bank, N.A. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SERJIK MANOOKIAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>UNION BANK, N.A., et al.,<br><br>    Defendants and Respondents. | B257753<br><br>(Los Angeles County<br>Super. Ct. No. EC059574) |

APPEAL from judgments of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Affirmed.

Mazur & Mazur, Janice R. Mazur, William E. Mazur, Jr.; Aroustamian & Associates and Ara Aroustamian for Plaintiff and Appellant.

Ruzicka, Wallace & Coughlin, Richard Sontag and Frank Coughlin for Defendant and Respondent Union Bank, N.A.

Stone|Dean, Kristi W. Dean and Leslie A. Blozan for Defendant and Respondent American Modern Home Insurance Company.

———————————

Serjik Manookian (Manookian) filed this lawsuit seeking compensation for repairs that he purchased for his house. Manookian alleges that the lender who provided his home loan, Union Bank, N.A., and its insurance company, American Modern Home Insurance Company (AMHI), are liable for his repair costs. Based on judicial estoppel, the trial court sustained Union Bank's demurrer, granted AMHI's motion for judgment on the pleadings, and denied Manookian leave to amend his second amended complaint. We affirm. During a prior bankruptcy proceeding, Manookian intentionally did not disclose his claims against Union Bank and AMHI for $130,000 yet benefited by being relieved of $644,578 of his debt; therefore, he is judicially estopped from pursuing those claims in this lawsuit.

## BACKGROUND

### I. Facts of the case

In October 2002, Manookian obtained a $165,000 loan from Union Bank and, to secure the loan, executed a deed of trust encumbering the house. The deed of trust required that Manookian maintain homeowner's insurance and, if he failed to do so, allowed Union Bank to obtain insurance and charge Manookian for the insurance premiums.

In early 2011, Manookian allowed the insurance to lapse. On February 9, 2011, Union Bank then obtained a forced-placed commercial insurance policy for the house and charged Manookian for the monthly premiums.

On February 18, the house suffered damage when a car hit a hydrant in front of the house. Manookian alleges having spent $130,000 in repairs to the house but has not disclosed when he paid that amount.

Only a month later, on March 16, Manookian filed for bankruptcy. In his bankruptcy filings, he never disclosed his claim that Union Bank and AMHI owed him $130,000. He denied the existence of any liquidated (certain) and unliquidated or contingent (uncertain) claims owed to him. He denied any casualty loss (such as to his house) in the last year. He denied the existence of any pending contracts (such as for

home repairs). His list of accounts payable (money owed to creditors) does not list money owed for house repairs. He disclosed making payments to only two creditors (for mortgage payments, not house repairs) in the last 60 days. He stated that he had only $750 cash on hand, no bank accounts, combined household income of $3,000 a month, and total annual income for the prior year of $35,674, yet unpaid debt of $644,578.

On September 9, the bankruptcy court ordered discharge of Manookian's debts, which means that Manookian was no longer legally required to pay the discharged debts. Manookian did not amend any of the information from his initial March 16 bankruptcy filing.

Manookian presented an insurance claim to AMHI for the $130,000 he spent on house repairs. The claim has not been paid.

## II.    Procedural history

In November 2012, Manookian filed this lawsuit alleging that Union Bank and AMHI are liable to him for the $130,000 in repair costs. The trial court sustained Union Bank's demurrer, granted AMHI's motion for judgment on the pleadings, and denied Manookian leave to amend his second amended complaint.

The trial court relied on two independent grounds. First, the trial court held that judicial estoppel barred Manookian's claims because he failed to disclose those claims to the bankruptcy court. Second, the trial court held that under the deed of trust signed between Manookian and Union Bank, Union Bank has no legal obligation to purchase homeowner's insurance for Manookian's benefit and therefore Manookian cannot use Union Bank's insurance policy to cover his repair costs.

## DISCUSSION

We review de novo the trial court's judgment sustaining a demurrer. (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1203.) "'A demurrer tests the legal sufficiency of the factual allegations in a complaint.'" (*Ibid.*) On trial court rulings such as denial of leave to amend after sustaining a demurrer, however, the standard of review is abuse of discretion, which is deferential to the trial court. (*Id.* at p. 1204.)

3

**I.      By failing to disclose his claims to the bankruptcy court, Manookian is judicially estopped from pursuing those claims in this lawsuit.**

The doctrine of judicial estoppel precludes "'a party from assuming a position in a legal proceeding inconsistent with one previously asserted.'" (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1610 (*Hamilton*).) In the bankruptcy context, when a debtor fails to disclose a claim likely to arise then judicial estoppel precludes the debtor from a subsequent attempt to pursue that claim. (*Id.* at pp. 1609–1610, 1613.) Specifically, a debtor is required to fully disclose to the bankruptcy court all assets, liabilities, and financial affairs, including any potential claim (right to payment) or possible cause of action in litigation. (*Hamilton*, *supra*, 195 Cal.App.4th at p. 1609; 11 U.S.C. § 521; Fed. Rules Bankr. Proc., rule 1007(b)(1), 11 U.S.C.) When a debtor fails to do so, the bankruptcy court has no knowledge of that claim that could have benefited the bankruptcy estate and thus has a skewed sense of the debtor's financial condition when it relies on the debtor's filings to approve the discharge. (See *International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 351, 353 (*International*).) Therefore, the debtor is later barred from pursuing that claim, which belonged to the bankruptcy estate. (See *ibid.*)

In sum, the courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert the existence of those same claims for his own benefit in a separate court proceeding. (See *International*, *supra*, 64 Cal.App.4th at p. 353.) This achieves the purpose of judicial estoppel to protect the integrity of the judicial process—particularly bankruptcy proceedings, which rely on full and honest disclosure by the debtor. (*Id.* at pp. 351, 353–354; *Thomas v. Gordon* (2000) 85 Cal.App.4th 113, 121 (*Thomas*).)

Here, Manookian admits that he intentionally did not disclose the claims at issue to the bankruptcy court. He nevertheless argues that (1) judicial estoppel cannot apply at the pleading stage because fact findings are required and (2) judicial estoppel applies only to a debtor who acted in bad faith, and his nondisclosure of a claim is an omission (as opposed to an affirmative statement) and therefore a good faith mistake that cannot

4

satisfy that requirement. Both arguments have already been rejected by our courts. We address these arguments in turn.

First, judicial estoppel can be applied at the pleading stage, such as when the facts pleaded and judicially-noticed indicate as a matter of law that the doctrine should be applied. (See *The Swahn Group, Inc. v. Segal* (2010) 183 Cal.App.4th 831, 844; *Hamilton*, *supra*, 195 Cal.App.4th at p. 1610 [sustaining demurrer based on judicial estoppel].) Here, the trial court has taken judicial notice of Manookian's filings and statements in the bankruptcy proceedings. As Manookian admits, those statements do not disclose the claims that he pursues in this litigation. While Manookian relies on *Cloud v. Northrup Grumman Corp.* (1998) 67 Cal.App.4th 995 (*Cloud*), where the court held the record before it required additional facts to decide the issue of judicial estoppel, each case has a unique set of facts and must be decided on those facts. Here, because no further facts need to be ascertained, judicial estoppel is appropriate at the pleading stage.

Second, judicial estoppel does not always require bad faith. (See *Hamilton*, *supra*, 195 Cal.App.4th at p. 1610 [rejecting debtor's argument that bad faith is required]; *International*, *supra*, 64 Cal.App.4th at pp. 352, 354 [same].) It is an equitable doctrine invoked by a court at its discretion, and bad faith is one of many factors that a court can consider. (See *International*, at pp. 350–351; *Thomas*, *supra*, 85 Cal.App.4th at pp. 118–119.)

Moreover, courts (particularly from our district) have frequently applied judicial estoppel to the exact situation here: an omission or nondisclosure of a claim. (See *International*, *supra*, 64 Cal.App.4th at pp. 352–353 [debtor intentionally did not disclose claim because he thought it was not required]; *Thomas*, *supra*, 85 Cal.App.4th at pp. 120–121 [debtor claimed to have not read bankruptcy filings before signing them and to have relied on advice of professionals]; *Hamilton*, *supra*, 195 Cal.App.4th at p. 1609.) While Manookian relies on *Cloud*, *supra*, 67 Cal.App.4th 995, the court in that case held there were insufficient facts before it to determine whether judicial estoppel should apply to the nondisclosure there and remanded for further fact finding. That is not the case here: Manookian admits that he intentionally did not disclose his claim because he

5

thought that he would be successful in obtaining the $130,000 from AMHI and Union Bank. This intended circumvention of the bankruptcy process is exactly the conduct that is prohibited. Manookian believed that he would obtain a large sum of money after the bankruptcy discharge but hid it from the bankruptcy court; if he had disclosed it, the bankruptcy trustee could have incorporated that asset into the bankruptcy plan and paid it to Manookian's creditors. Instead, Manookian was discharged of $644,578 in debt and now seeks to obtain $130,000 with no strings attached. This is not a case of good faith mistake.

In sum, Manookian used the bankruptcy court to get rid of his creditors while concealing that he planned on obtaining a large sum of money in the near future and now seeks to use this court to complete his plan. The doctrine of judicial estoppel prohibits litigants from so abusing the judicial process. Thus, we affirm the trial court's decision.

## II.     The trial court did not abuse its discretion in denying Manookian leave to amend his second amended complaint.

When the plaintiff demonstrates a reasonable possibility that the defect can be cured by amendment, we will reverse a trial court's denial of leave to amend as an abuse of its discretion. (*Bank of America, N.A. v. Mitchell*, *supra*, 204 Cal.App.4th at p. 1204.) Here, Manookian has not shown a reasonable possibility that the defect in his second amended complaint can be cured by amendment.

First, Manookian argues that he could amend to allege that his failure to disclose the litigation claim was due to good faith mistake because he thought that the repair costs would be covered by Union Bank's insurance policy with AMHI. But, as discussed above, this scenario is precisely when judicial estoppel should apply: he intentionally hid an asset from the bankruptcy court that he planned on obtaining after discharge of his debts. (See *International*, *supra*, 64 Cal.App.4th at pp. 351–354.)

Second, Manookian argues that he could amend to allege that he provided his financial documents to his bankruptcy attorney three months before the property damage occurred and four months before the bankruptcy filing. This argument is also rejected.

6

Debtors have an obligation to provide information that is true at the time of filing (here, March 16), which is signed under oath and penalty of perjury. (See 11 U.S.C. § 521; Fed. Rules Bankr. Proc., rule 1007(b)(1), 11 U.S.C.) Thus, it matters not when Manookian gave his documents to his bankruptcy attorney; his obligation to tell the truth adhered at the inception of his bankruptcy case. Further, Manookian signed and dated the legal documents on March 11, only a few days before the filing on March 16. Thus, he reviewed the bankruptcy filing only a few days, not months, before the filing—and *after* the damage had occurred. Further, some of the filings specifically seek information based on the date of the filing (e.g., "within one year immediately preceding the commencement of this case"); again, it does not matter when he gave the documents to his attorney, because he was bound to verify the truth of his statements during the specified times. In addition, debtors have a continuing duty to amend their filings with any new information. (*In re Khalil* (Bankr. 9th Cir. 2007) 379 B.R. 163, 177; *In re Searles* (Bankr. 9th Cir. 2004) 317 B.R. 368, 377–378.) Yet Manookian failed to do so. Finally, debtors cannot avoid judicial estoppel by alleging willful blindness in not reading legal documents that they sign or attempting to blame the advice of a professional. (See *Thomas*, *supra*, 85 Cal.App.4th at p. 121.)

Third, Manookian argues that he could amend to allege facts "relevant to the timing and source of any payments made for repairs." His proposed amendment purports to address that despite Manookian's characterization, this case seems to concern not merely an omission but also affirmative inconsistent positions taken by Manookian in this case versus the bankruptcy proceeding. The basis of this lawsuit is his allegation of paying $130,000 to make house repairs at some undisclosed time. Yet, only a month after the damage to his house, he stated in his bankruptcy filing that he had not yet paid anyone for repairs and that he only has $750 in hand. If he did not pay for the repairs in the month between the damage and his bankruptcy filing, then the next possible time was during the bankruptcy proceeding. But at no time during the proceeding did he disclose that he had $130,000 on hand.

Presumably Manookian would amend to add facts that he paid for the repairs after the bankruptcy discharge and before the filing of this lawsuit.  He has not, however, presented those proposed facts to the court, and thus his vague, conclusory statements that the new proposed facts would cure the defect do not satisfy his burden on appeal.  Moreover, those additional facts still would not excuse his intentional omission of his claim against Union Bank and AMHI and therefore could not cure the defect in his second amended complaint.

## DISPOSITION

The judgments are affirmed.  Costs are awarded to Union Bank N.A. and American Modern Home Insurance Company.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.