Filed 8/15/16  Samson v. OneWest Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARILOU D. SAMSON,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ONE WEST BANK et al.,<br><br>    Defendants and Respondents. | A144526<br><br>(San Francisco City and County<br>Super. Ct. No. CGC-13-533711) |

This is the third in a series of appeals to this court stemming from appellant's attempts to challenge the foreclosure sale of a residence in San Francisco.  In the first of these appeals, we concluded that appellant's claims—which challenged respondent's authority to foreclose and also raised trespass and conversion claims related to the foreclosure process—were barred by the doctrine of judicial estoppel.  The present appeal arises from a separate superior court action in which appellant alleged these same violations against both OneWest and Aurora Loan Services, LLC (Aurora).  The trial court granted a motion for judgment on the pleadings in favor of OneWest Bank, leading to the second of the three appeals.  Subsequently, the trial court granted Aurora's motion for judgment on the pleadings and appellant filed the present appeal.  We affirm.

**STATEMENT OF THE CASE AND FACTS**

As described at length in our nonpublished opinion in *Samson v. OneWest* (A139967) (*Samson II*), on July 26, 2005, appellant borrowed $576,000 from Evergreen Lending, Inc., secured by a deed of trust on the property located at 2574 31st Avenue in

1

San Francisco, California. The deed of trust was subsequently assigned to Mortgage Electronic Registration Systems, and eventually to OneWest National Bank (OneWest) and then to "U.S. Bank National Association as Trustee for the LXS 2005-5N" (LXS Trust). Meanwhile, appellant's loan payments increased, she became unable to pay them, and in July 2010, a "Notice of Default and Election to Sell under Deed of Trust" was filed on behalf of OneWest.

On October 25, 2010, appellant, in propria persona, sued Aurora Loan Services (Aurora) and other defendants including OneWest and U.S. Bank National Association (U.S. Bank) in federal district court (*Samson I*), challenging the securitization of her mortgage loan and, based on alleged defects in the various assignments of the deed of trust, the defendants' authority to pursue foreclosure.

On November 23, 2010, appellant filed a voluntary petition in bankruptcy under chapter 13 of the federal Bankruptcy Act.

The federal court case against Aurora was dismissed in November 2011, after appellant was permitted two opportunities to amend her complaint; the other defendants had previously been dismissed because appellant failed to serve them.

The following day, appellant filed her complaint in *Samson II*, titled "Complaint to Establish Deed as Mortgage and Quiet Title by Mortgagor," against OneWest and Meridian Foreclosure Service. Aurora was not a defendant in this action. OneWest's demurrer was sustained with leave to amend to allege a quiet title claim. Appellant's first amended complaint, filed on June 5, 2012, added U.S. Bank as a defendant and alleged several causes of action, including wrongful foreclosure and quiet title, with factual allegations including that the defendant trespassed on appellant's property by forcefully drilling the front door locks and "robbed" appellant of personal property.

On November 28, 2012, the bankruptcy court confirmed appellant's bankruptcy plan.

The trial court in *Samson II* sustained demurrers to appellant's first amended complaint without leave to amend as to several of the causes of action but with leave to amend the quiet title cause of action. Appellant filed a second amended complaint, the

2

defendants demurred and the trial court again gave appellant leave to amend. Shortly after appellant filed her third amended complaint, on May16, 2013, the property was sold to a third party at a trustee's sale. The trial court sustained a demurrer to the third amended complaint without leave to amend on August 7, 2013. On August 27, 2013, appellant filed a motion for a new trial, which was denied on October 1, 2013. Appellant, represented by counsel, appealed.

Meanwhile, on August 22, 2013, appellant, in pro. per., filed the present complaint for intentional trespass, negligent trespass and conversion against OneWest and Aurora. Appellant alleged that on August 22, 2010, and "thereafter on at least one possibly two other occasion[s]," the defendants, through their agents and employees, entered appellant's property without having obtained legal process or a court order and without permission from appellant. The first cause of action alleged that the entry was intentional and/or reckless; the second cause of action alleged that the entry was negligent. The third cause of action alleged that on August 22, 2010, the defendants "intentionally and substantially interfered with [appellant's] personal and business property by taking possession of and removing the various items of [appellant's] personal and business property," without her consent, including jewelry, business property, "family and other personal items," and "home finishing and construction materials." The defendants' actions were alleged to have been malicious in that they reflected "willful, wanton, or reckless disregard for the rights of another," supporting an award of punitive damages.

Aurora demurred, arguing the claims were barred by the statute of limitations and by res judicata and collateral estoppel, and failed on the merits. The trial court overruled the demurrer as to the claims for intentional trespass and conversion, finding that the complaint was filed within three years of August 22, 2010; res judicata did not apply because Aurora was not a party to *Samson II* and a different primary right was involved in *Samson I*. The trial court found the negligent trespass claim barred by the two-year statute of limitations and therefore sustained the demurrer to that cause of action without leave to amend.

The trial court had previously granted a motion for judgment on the pleadings filed by OneWest, finding the claims as to that defendant barred by res judicata. On October 20, 2014, Aurora filed a motion for judgment on the pleadings, arguing that appellant's claims were barred by judicial estoppel because she failed to disclose them in her chapter 13 bankruptcy case, as well as that the complaint was too vague.[1]

The trial court filed its order granting judgment on the pleadings on January 7, 2015. The order states: "The court relies on and finds instructive the holding of *Hamilton v. Greenwich Investors XXVI, LLC,* 195 Cal.App.4th 1602 (2011) [(*Greenwich Investors*)] and notes plaintiff's 3-page opposition is insufficient and fails to counter the pleadings filed by defendant Aurora." A judgment of dismissal was entered on the same date.

Appellant filed a timely notice of appeal on March 9, 2015.

## DISCUSSION

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.) 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law. . . .' (*Ibid.*)" (*People ex rel. Harris v. Pac Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777.) We review the complaint to determine whether it "alleges facts sufficient to state a cause of action under any legal theory." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) We affirm the judgment on the pleadings if it is supported by any proper ground, "even if the trial court relied on an improper ground" and regardless of whether "the defendants asserted the proper ground in the trial court." (See *id.* at p. 880, fn. 10.)

---

[1] OneWest had successfully obtained a judgment on the pleadings on the ground that the claims against it were barred by res judicata. (*Samson III*) The propriety of that judgment and the trial court's award of sanctions against appellant is the subject of appellant's second appeal currently pending in this court (A143668).

4

In relying on *Greenwich Investors*, which held that a suit alleging mortgage loan and foreclosure related claims was precluded by the plaintiff's failure to disclose these claims in a prior bankruptcy proceeding, the trial court accepted Aurora's argument that appellant's claims were barred by judicial estoppel. Appellant listed her federal lawsuit (*Samson I*) in her bankruptcy schedules but did not list any state law claims against Aurora (or OneWest).

"The concept of judicial estoppel prevents a party from asserting a position in a judicial proceeding that is contrary or inconsistent with a position previously asserted in a prior proceeding. The purpose is to protect the integrity of the judicial process and not the parties of the lawsuit." (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 (*International Engine*).) Judicial estoppel "is a doctrine invoked by courts in their discretion" (*id.* at p. 351) and "an extraordinary remedy that should be applied with caution." (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598.) " '[T]he doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake. [Citations.]' " (*International Engine*, at p. 351, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

"It is a long-standing tenet of bankruptcy law that one seeking the benefits of protection under the bankruptcy law has a concomitant duty to disclose to the creditors all of the debtor's interests and property rights without limitation. (*Oneida Motor Freight, Inc. v. United Jersey Bank* [(3rd Cir. 1988)] 848 F.2d [414,] 416.)" (*International Engine, supra,* 64 Cal.App.4th at p. 351.) "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." (*Burnes v. Pemco Aeroplex, Inc.* (11th Cir. 2002) 291 F.3d 1282, 1286.) "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system.' " (*Ibid.*,

5

quoting, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.* (3d Cir.1996) 81 F.3d 355, 362.) Therefore, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 783 (*Hamilton*).) "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." (*Id.* at p. 784.)

Hamilton* involved a suit for bad faith and breach of an insurance contract. Hamilton filed an insurance claim for damage and loss he attributed to tenants he had just evicted from a house he owned. Suspecting Hamilton was responsible for the losses, the insurer investigated, then denied the claim a few days after Hamilton had filed for chapter 7 bankruptcy. On his bankruptcy schedules, Hamilton listed a vandalism loss against his estate but did not list any claim against the insurer as an asset. After the bankruptcy court discharged Hamilton's debts, the trustee noticed the large vandalism loss and requested information from Hamilton that the latter did not provide. The trustee moved to dismiss the bankruptcy based on bad faith, lack of truthfulness under oath and failure to cooperate, and the court dismissed the bankruptcy. (*Hamilton, supra,* 270 F.3d at pp. 780-781.) A few months later, Hamilton sued the insurer for breach of the covenant of good faith and fair dealing and breach of contract. (*Id.* at p. 781.) The trial court granted summary judgment in part on the basis of judicial estoppel, and the Ninth Circuit affirmed. (*Id.* at pp. 782, 786.) The court held that Hamilton had asserted inconsistent positions by failing to list his claims against the insurer on his bankruptcy schedules and that the bankruptcy court had relied upon the nondisclosure even though the bankruptcy was subsequently discharged. (*Id.* at p. 784.) Hamilton was precluded from pursuing the undisclosed claims because he "knew of all the material facts surrounding the damage to the house and [the insurer's] investigation and denial of his claim at the time he filed his bankruptcy schedules and for many months before pursuing legal action." (*Ibid.*)

The *Hamilton* court explained that it "invoke[d] judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets." (*Hamilton*, *supra*, 270 F.3d at p. 785.) The duty to disclose includes " '*contingent and unliquidated claims*.' " and the debtor's duty to disclose, as we have said, "continues for the duration of the bankruptcy proceeding." (*Ibid.*) " 'The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.' " (*Ibid.*, quoting *In re Coastal Plains, Inc.* (5th Cir. 1999) 179 F.3d 197, 208, italics omitted.)

*Greenwich Investors, supra,* 195 Cal.App.4th 1602, which applied these principles in the context of a lender liability suit, held that the trial court properly sustained a demurrer without leave to amend based on judicial estoppel because the debtor had failed to disclose a claim against one of his principal creditors despite the bankruptcy schedules expressly asking for counterclaims and rights to setoff claims. (*Id.* at pp. 1609, 1613.) Because the events underlying the claim occurred before the debtor filed for bankruptcy, the debtor "must have known of the facts allegedly justifying the claim." (*Id.* at p. 1614.)

Appellant argues that *Greenwich* does not apply here because Aurora was not a creditor in the bankruptcy proceeding who would have been entitled to an offset, and because she did disclose "her claim related to the conversion and trespass." That Aurora was not a creditor is not dispositive, as *Hamilton, supra,* 270 F.3d 278, and other cases illustrate. (E.g., *International Engine, supra,* 64 Cal.App.4th 345.) As we have said, the purpose of judicial estoppel is to protect the integrity of the judicial process, not the parties. (*Id.* at p. 350.)

7

Appellant's assertion that she disclosed her claims is based on the fact that she listed in her bankruptcy schedules pending insurance claims for property lost in a residential burglary. In a "Schedule B – Personal Property" (Schedule B) filed on December 28, 2010, she listed "stolen items from above property 2574 31st Ave., SF., CA 94116," with a value of $25,000. Her amended Schedule B filed on July 18, 2011, listed "Insurance claim for home burglary – items stolen include printers used in business, household items, jewelry and collectibles, building materials for home improvements. [¶] Recovery contingent on production of inventory of items and receipts and insurance company approval." These insurance claims cannot reasonably be viewed as disclosures of potential legal claims against Aurora as they give no indication appellant might pursue litigation against any known intruder, much less against Aurora specifically.

Appellant states that she did not pursue a lawsuit for trespass and conversion at the time she filed for bankruptcy because she was "attempting to settle the claim with the carrier." But appellant alleged the facts underlying her later-asserted trespass and conversion claims—forcible entry and removal of property from her home—in her first amended complaint in *Samson II*, which was filed in June 2012, months before her bankruptcy plan was confirmed. At that time, the allegations later asserted against both OneWest and Aurora were asserted against OneWest, as appellant had not named Aurora as a defendant in *Samson II*. " ' "The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed." ' " (*In re Coastal Plains, Inc.* (5th Cir. 1999) 179 F.3d 197, 208, quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Assn.* (E.D. Tex 1996) 932 F.Supp. 859, 867.) Clearly appellant knew the factual basis of her trespass and conversion claims long before the bankruptcy proceedings concluded.

There can be no question appellant knew she had a duty to disclose lawsuits in her bankruptcy schedules and knew her duty to disclose continued throughout the pendency of the bankruptcy proceedings. This is evident from her bankruptcy court filings. After

8

her initial filing, which mentioned only a "settlement on lawsuit" with payment "contingent on judgment," she filed an amended Schedule B in July 2011, adding two pending lawsuits, as well as the entry of judgment in the previously listed settlement. She then filed another amended Schedule B in October 2011, adding the then-pending suit in *Samson I.* Even crediting appellant's assertion that she was at this point pursing insurance claims for losses incurred in the alleged entry of her home, she obviously was aware of the factual basis of her later-asserted trespass and conversion claims before she even filed her petition for bankruptcy, and she in fact asserted them as legal claims (albeit part of a different cause of action) months before her bankruptcy plan was confirmed. Appellant is not entitled to recover damages now that should have been taken into consideration by the bankruptcy court for the benefit of her creditors. Having failed to disclose her potential legal claims during the course of the bankruptcy proceedings, she is precluded from asserting them now.

### DISPOSITION

The judgment is affirmed.

Each party to bear its own costs.

_____

Kline, P.J.

We concur:


_____

Richman, J.


_____

Miller, J.