Filed 8/15/16  Samson v. OneWest Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARILOU D. SAMSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ONEWEST BANK,<br><br>        Defendant and Respondent. | A143668<br><br>(San Francisco City County<br>Super. Ct. No. CGC13533711) |

This is the second in a series of appeals stemming from appellant's attempts to challenge the foreclosure sale of a residence in San Francisco.  In the first of these appeals, we concluded that appellant's claims—which challenged respondent's authority to foreclose and also raised trespass and conversion claims related to the foreclosure process—were barred by the doctrine of judicial estoppel.  The present appeal arises from a separate superior court action in which appellant alleged the same trespass and conversion claims.  The trial court granted OneWest's motions for judgment on the pleadings and for sanctions, finding the action barred by res judicata due to both the prior state case and a prior federal one.  For the reasons we will explain, we reverse the sanctions order and otherwise affirm the judgment.

### STATEMENT OF THE CASE AND FACTS

As described at length in our nonpublished opinion in *Samson v. OneWest Bank* (A139967) (*Samson II*), on July 26, 2005, appellant borrowed $576,000 from Evergreen Lending, Inc., secured by a deed of trust on the property located at 2574 31st Avenue in San Francisco, California.  The deed of trust was subsequently assigned to Mortgage

1

Electronic Registration Systems, and eventually to OneWest Bank (OneWest) and then to "U.S. Bank National Association as Trustee for the LXS 2005-5N" (LXS Trust). Meanwhile, appellant's loan payments increased, she became unable to pay them, and in July 2010, a "Notice of Default and Election to Sell under Deed of Trust" was filed on behalf of OneWest.

On October 25, 2010, appellant, in propria persona, sued OneWest and other defendants in federal district court (*Samson I*), challenging the securitization of her mortgage loan and, based on alleged defects in the various assignments of the deed of trust, the defendants' authority to pursue foreclosure.

Meanwhile, on November 23, 2010, appellant filed a voluntary petition in bankruptcy under chapter 13 of the federal Bankruptcy Act.

In the federal court case, appellant never served OneWest, which was eventually dismissed from the action. In her case against the one defendant she did serve, Aurora Loan Services (Aurora), she was permitted two opportunities to amend her complaint before the case was dismissed in November 2011.

The day after the federal court case was dismissed, November 15, 2011, appellant filed her complaint in *Samson II*, titled "Complaint to Establish Deed as Mortgage and Quiet Title by Mortgagor." OneWest's demurrer was sustained with leave to amend to allege a quiet title claim. Appellant's first amended complaint alleged several causes of action, including wrongful foreclosure and quiet title; the factual allegations included that the defendant trespassed on appellant's property by forcefully drilling the front door locks and "robbed" appellant of personal property. The trial court sustained demurrers without leave to amend as to several of the causes of action but with leave to amend the quiet title cause of action. Appellant filed a second amended complaint, the defendants demurred and the trial court again gave appellant leave to amend. Another demurrer was sustained and appellant was again granted leave to amend the quiet title cause of action; the same result followed a second amended complaint. Shortly after appellant filed her third amended complaint, the property was sold to a third party at a trustee's sale. The trial court sustained a demurrer to the third amended complaint without leave to amend

2

on August 7, 2013. She filed a motion for a new trial on August 27, 2013, which was denied on October 1, 2013, and (now represented by counsel) filed her notice of appeal on October 7, 2013.

Meanwhile, on August 22, 2013, appellant, in pro. per., filed her complaint in the present case, alleging causes of action for intentional trespass, negligent trespass and conversion against OneWest Bank N.A. (One West)[1] and Aurora Loan Service LLC (Aurora). Appellant alleged that on August 22, 2010, and "thereafter on at least one possibly two other occasion[s]," the defendants, through their agents and employees, entered appellant's property without having obtained legal process or a court order and without permission from appellant. The first cause of action alleged that the entry was intentional and/or reckless; the second cause of action alleged that the entry was negligent. The third cause of action alleged that on August 22, 2010, the defendants "intentionally and substantially interfered with [appellant's] personal and business property by taking possession of and removing the various items of [appellant's] personal and business property," without her consent, including jewelry, business property, "family and other personal items," and "home finishing and construction materials." The defendants' actions were alleged to have been malicious in that they reflected "willful, wanton, or reckless disregard for the rights of another," supporting an award of punitive damages. Appellant alleged that OneWest "undertook this course of conduct in an effort to obtain possession of [appellant's] property by bullying her" and "One West in particular should be punished for presuming it maintains the right to bypass the lawful judicial process and assert a superior possessory interest in [appellant's] premises on its own."

OneWest filed its answer on May 13, 2014, followed on June 24, 2014, by a motion for judgment on the pleadings arguing that the complaint was barred by res judicata due to the prior federal and state court actions. OneWest noted that appellant alleged in the state court case that OneWest trespassed on and forcefully entered her

---

[1] The complaint named OneWest as "One West Bank."

property and "robbed" her of "valuables," and that the claims could have been litigated in the federal case because the alleged entry occurred before that case was filed.

Appellant opposed the motion, arguing that res judicata did not apply because the prior actions involved a different primary right. She also argued that because *Samson II* was on appeal, there was no final judgment for res judicata purposes. OneWest argued that res judicata barred the new action because the claims could have been raised in the prior federal and state cases; that the same primary rights were at issue based on the factual allegations of trespass and taking of personal property in the first amended complaint in *Samson II*; and that the appeal in *Samson II* was irrelevant because appellant waived her right to appeal the order sustaining the demurrer to the first amended complaint by amending the complaint rather than challenging the ruling.

On August 5, 2014, appellant's attorney substituted into the case. On the same date, OneWest filed a motion for sanctions (Code Civ. Proc., § 128.7), seeking $18,424.00 for reasonable attorney fees and costs incurred in responding to a groundless complaint.

On August 25, 2014, the court granted the motion for judgment on the pleadings without leave to amend, finding all appellant's causes of action as to OneWest barred by res judicata, and entered a judgment of dismissal as to OneWest.[2]

On September 26, 2014, the court granted OneWest's motion for sanctions, ordering appellant to pay $2,680.50.

Appellant filed a timely notice of appeal on November 10, 2014.

## DISCUSSION

### I.

" 'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc.,

---

[2] The case continued as to Aurora, which is not a party to the present appeal, and judgment on the pleadings was entered in January 2015. Appellant's appeal from that judgment is addressed in our nonpublished opinion in *Samson v. Aurora Loan Services, LLC* (A144526).

4

§ 438, subd. (c)(3)(B)(ii).) A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.' (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.) 'All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law. . . .' (*Ibid.*)" (*People ex rel. Harris v. Pac Anchor Transp., Inc.* (2014) 59 Cal.4th 772, 777.) We review the complaint to determine whether it "alleges facts sufficient to state a cause of action under any legal theory." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879.) We affirm the judgment on the pleadings if it is supported by any proper ground, "even if the trial court relied on an improper ground" and regardless of whether "the defendants asserted the proper ground in the trial court." (See *id.* at p. 880, fn. 10.)

Appellant contends the trial court erred in finding the present case barred by res judicata because neither *Samson I* nor *Samson II* resulted in a final judgment on the merits and because those cases involved different primary rights. Respondent defends the trial court's decision on res judicata and also urges us to affirm because appellant's claims are barred under the doctrine of judicial estoppel. We found the latter argument dispositive in *Samson II* and it is here as well, for the same reasons.

As we explained in *Samson II*, "[t]he concept of judicial estoppel prevents a party from asserting a position in a judicial proceeding that is contrary or inconsistent with a position previously asserted in a prior proceeding. The purpose is to protect the integrity of the judicial process and not the parties of the lawsuit." (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 (*International Engine*).) Judicial estoppel "is a doctrine invoked by courts in their discretion" (*id.* at p. 351) and "an extraordinary remedy that should be applied with caution." (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598.) " '[T]he doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a

5

result of ignorance, fraud, or mistake.  [Citations.]' " (*International Engine,* at p. 351, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

"It is a long-standing tenet of bankruptcy law that one seeking the benefits of protection under the bankruptcy law has a concomitant duty to disclose to the creditors all of the debtor's interests and property rights without limitation.  (*Oneida Motor Freight, Inc. v. United Jersey Bank* [(3rd Cir. 1988)] 848 F.2d [414,] 416.)" (*International Engine, supra,* 64 Cal.App.4th at p. 351.)  "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." (*Burnes v. Pemco Aeroplex, Inc.* (11th Cir. 2002) 291 F.3d 1282, 1286.)  "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system.' " (*Ibid.*, quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.* (3d Cir.1996) 81 F.3d 355, 362.)  Therefore, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 783 (*Hamilton*).)  "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." (*Id.* at p. 784.)

Appellant filed a voluntary petition in bankruptcy under chapter 13 of the federal Bankruptcy Act on November 23, 2010, a month after she filed her complaint in *Samson I.* [3]  The bankruptcy court confirmed her chapter 13 plan on November 28, 2012, and appellant was granted a discharge on May 20, 2016.  OneWest argues that appellant is precluded from pursuing her trespass and conversion claims in the present case because she failed to list them in her chapter 13 bankruptcy proceeding.

---

[3] On December 1, 2015, we granted OneWest's request for judicial notice of documents including several filed in the bankruptcy proceeding.

6

Appellant's bankruptcy court schedules listed the federal case against OneWest and several unrelated lawsuits. They did not, however, disclose her state claims, despite the fact that *Samson II* was filed a year before the bankruptcy proceeding concluded and the facts underlying the trespass and conversion claims occurred even before *Samson I* was filed.

Asserting that she did identify her claims related to trespass and conversion in the bankruptcy case, appellant points out that she listed "stolen items from above property 2574 31st Ave., SF., CA 94116," with a value of $25,000, on her December 28, 2010 Schedule B, and on a July 18, 2011 Amended Schedule B, "Insurance claim for home burglary – Items stolen include printers used in business, household items, jewelry and collectibles, building materials for home improvements. [¶] Recovery contingent on production of inventory of items and receipts and insurance company approval." These references to "stolen items" and "[i]nsurance claim for home burglary" give no indication of a potential recovery through a lawsuit and therefore do not satisfy the disclosure requirement.

Appellant does not point to any other bankruptcy court filing mentioning a potential state court claim against OneWest. At oral argument, appellant's attorney represented that appellant, acting in pro. per., advised the bankruptcy court of the state case at a hearing in July 2012. The July 6, 2012, bankruptcy court hearing was on appellant's motion to vacate that court's July 21, 2011, order lifting the automatic stay. Counsel directed this court to an entry in the bankruptcy court's docket (included in the clerk's transcript for a related appeal, *Samson v. OneWest Bank et al.* (A144526), of which we take judicial notice) indicating the existence of a "PDF with attached Audio File" for the July 6, 2012, hearing. Counsel stated that he had not been able to obtain this file, but that it would reveal what was said at the hearing. We have obtained the audio recording from the bankruptcy court and have taken judicial notice of it. Seeking to have the bankruptcy court vacate the order lifting the stay—that is, to prevent OneWest from proceeding with the foreclosure sale then scheduled for the following week—appellant argued that OneWest was not the holder of the loan; the court explained that the stay had

7

been lifted because appellant had not met the obligation imposed by the bankruptcy court to make payments on the loan, an issue entirely separate from her challenges to the validity of the assignments of the loan. Appellant did not mention anything about a state court action.

Appellant has offered us no other indication that she disclosed her state court claims at any time during the pendency of the bankruptcy proceeding.

In *Hamilton, supra,* 270 F.3d 778, Hamilton filed an insurance claim for damage and loss he attributed to tenants he had just evicted from a house he owned. Suspecting Hamilton was responsible for the losses, the insurer investigated, then denied the claim a few days after Hamilton had filed for chapter 7 bankruptcy. On his bankruptcy schedules, Hamilton listed a vandalism loss against his estate but did not list any claim against the insurer as an asset. After the bankruptcy court discharged Hamilton's debts, the trustee noticed the large vandalism loss and requested information from Hamilton that the latter did not provide. The trustee moved to dismiss the bankruptcy based on bad faith, lack of truthfulness under oath and failure to cooperate, and the court dismissed the bankruptcy. (*Hamilton,* at pp. 780-781.) A few months later, Hamilton sued the insurer for breach of the covenant of good faith and fair dealing and breach of contract. (*Id.* at p. 781.) The trial court granted summary judgment in part on the basis of judicial estoppel, and the Ninth Circuit affirmed. (*Id.* at pp. 782, 786.) The court held that Hamilton had asserted inconsistent positions by failing to list his claims against the insurer on his bankruptcy schedules and that the bankruptcy court had relied upon the nondisclosure even though the bankruptcy was subsequently discharged. (*Id.* at p. 784.) Hamilton was precluded from pursuing the undisclosed claims because he "knew of all the material facts surrounding the damage to the house and [the insurer's] investigation and denial of his claim at the time he filed his bankruptcy schedules and for many months before pursuing legal action." (*Id.* at p. 785.)

The *Hamilton* court explained that it "invoke[d] judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all

8

his assets." (*Hamilton, supra,* 270 F.3d at p. 785.)  The duty to disclose includes " '*contingent and unliquidated claims*,' " and the debtor's duty to disclose, as we have said, "continues for the duration of the bankruptcy proceeding." (*Ibid.*)  " 'The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.  The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.' " (*Ibid.*, quoting *In re Coastal Plains, Inc.* (5th Cir. 1999) 179 F.3d 197, 208, italics omitted.)

*Hamilton v. Greenwich Investors* (2011) 195 Cal.App.4th 1602, which applied these principles in the context of a lender liability suit, held that the trial court properly sustained a demurrer without leave to amend based on judicial estoppel because the debtor had failed to disclose a claim against one of his principal creditors despite the bankruptcy schedules expressly asking for counterclaims and rights to setoff claims. (*Id.* at pp. 1609, 1613.)  Because the events underlying the claim occurred before the debtor filed for bankruptcy, the debtor "must have known of the facts allegedly justifying the claim." (*Id.* at p. 1614.)

There can be no question appellant knew she had a duty to disclose lawsuits in her bankruptcy schedules and knew her duty to disclose continued throughout the pendency of the bankruptcy proceedings.  This is evident from her bankruptcy court filings.  After her initial filing, which mentioned only a "settlement on lawsuit" with payment "contingent on judgment," she filed an amended Schedule B in July 2011, adding two pending lawsuits, as well as the entry of judgment in the previously listed settlement.  She then filed another amended Schedule B in October 2011, adding the then-pending suit in *Samson I.*  Appellant is not entitled to recover damages now that should have been taken into consideration by the bankruptcy court for the benefit of her creditors.  Having

failed to disclose her potential legal claims during the course of the bankruptcy proceedings, she is precluded from asserting them now.

We recognize that "determination of the existence of judicial estoppel is a factual finding" (*International Engine, supra,* 64 Cal.App.4th at p. 354) generally ill-suited to this court, and that respondents have raised the issue for the first time on appeal. Respondents have supplied us with various records from the bankruptcy proceedings, however, of which we have taken judicial notice. Appellant has offered additional documents which we have also judicially noticed, and we have taken judicial notice of the record in *Samson v. OneWest Bank et al.* (A144526), which includes documents from the bankruptcy court file. The parties have been afforded a full opportunity to address the judicial estoppel issue in briefs and at oral argument, and to present any further relevant documentation.

We conclude appellant's present claims are barred.

**II**.

Although the foregoing discussion is dispositive with regard to the judgment on the pleadings, the parties' dispute over the application of res judicata requires discussion because the challenged sanctions order was based on the trial court's determination that the present action was barred by res judicata.

" 'Res judicata' describes the preclusive effect of a final judgment on the merits. Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 (*Mycogen*).) "Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding. (*Busick v. Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 974.) Res judicata bars the litigation not only of issues that were actually litigated in the prior proceeding, but also issues that could have been litigated in that proceeding. (*Id.* at p. 975.)" (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.)

10

In determining the res judicata effect of a prior federal court judgment on subsequent state court litigation, federal law controls on the questions whether the federal judgment is final and on the merits. (*Martin v. Martin* (1970) 2 Cal.3d 752, 761; *Gamble v. General Foods Corporation* (1991) 229 Cal.App.3d 893, 898-899 (*Gamble*); *Louie v. BFS Retail and Commercial Operations, LLC* (2009) 178 Cal.App.4th 1544 , 1553 ["where a prior federal judgment was based on *federal question* jurisdiction, the preclusive effect of the prior judgment of a federal court is determined by federal law"].) Contrary to respondent's argument,[4] however, when the question is whether the same issues were involved in the prior federal case as in the present state case, California courts use the primary rights test. (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 991; *Acuna v. Regents of University of California* (1997) 56 Cal.App.4th 639, 648; *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286; *Gamble, supra,* 229 Cal.App.3d at p. 898; *Boccardo v. Safeway Stores, Inc.* (1982) 134 Cal.App.3d 1037, 1041-1043; *Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 447 & fn. 2.)[5]

---

[4] OneWest errs in relying upon the federal test for identity of the issues, the "most important" prong of which asks whether the two cases arose from the same "transactional nucleus of facts." (*Turtle Island Restoration Network v. United States Dept. of State* (9th Cir. 2012) 673 F.3d 914, 918, quoting *Costantini v. Trans World Airlines* (9th Cir. 1982) 681 F.2d 1199, 1202 (*Costantini*).)

[5] The *Gamble* court explained: "Where, as here, an action is filed in a California state court and the defendant claims the suit is barred by a final federal judgment, California law will determine the res judicata effect of the prior federal court judgment on the basis of whether the federal and state actions involve the same primary right. (*Gamble*, *supra*, 229 Cal.App.3d at p. 898, quoting *Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954-955 (*Agarwal*), disapproved on other grounds in *White v. Ultramar* (1999) 21 Cal.4th 563, 574, fn. 4.)

"Defendant's cited authorities do not hold otherwise. *Martin v. Martin*[*, supra,*] 2 Cal.3d 752 and its progeny hold that a federal court judgment has the same effect in California courts as it would in a federal court. That is, once a federal order or judgment is rendered, as for instance in district court, that judgment is final for purposes of res judicata until it is reversed on appeal or set aside or modified in the court rendering the order or judgment. (*Id.* at p. 761.) The California cases cited by defendant do not hold

11

Under the primary rights theory, " 'a "cause of action' is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty. [Citation.]' " (*Mycogen, supra,* 28 Cal.4th at p. 904.) A primary right " 'is simply the plaintiff's right to be free from the particular injury suffered,' " and violation of a primary right gives rise to a single cause of action. (*Ibid.*) The primary right must be " 'distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief." [Citation.] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other." [Citation.]' " (*Ibid.*) " '[W]hen a plaintiff attempts to divide a primary right and enforce it in two suits,' " " 'if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the

---

that California courts must employ the transactional approach for the purposes of a res judicata analysis when a prior judgment has been rendered in federal court. Although *Costantini*[, *supra,*] 681 F.2d [at p.] 1200 reaches a different conclusion, we believe that court misconstrued the holdings in *Younger v. Jensen* (1980) 26 Cal.3d 397 and *Levy v. Cohen* (1977) 19 Cal.3d 165." (*Gamble, supra,* 229 Cal.App.3d at p. 899.)

*Costantini* used the federal "transactional nucleus of facts" to determine whether a prior federal case barred a subsequent federal case after concluding that while a federal court sitting in diversity must apply the res judicata law of the state in which it sits, California law "determines the res judicata effect of a prior federal court judgment by applying federal standards." (*Costantini*, *supra*, 681 F.2d at p. 1201.) The cases cited in support of this statement were the two mentioned by *Gamble*: *Younger v. Jensen, supra,* 26 Cal.3d 397, and *Levy v. Cohen, supra,* 19 Cal.3d 165. *Younger*, applied the rule that a federal judgment "has the same effect in the courts of this state as it would have in a federal court" in concluding that, under federal law, a judgment is considered final for res judicata purposes despite the pendency of an appeal, and collateral estoppel does not require "mutuality" of parties. (*Younger*, at p. 411.) *Levy* applied the rule in holding that res judicata prevents readjudication of "all matters (including jurisdiction) which were, or might have been, litigated in a prior proceeding between the same parties." (*Levy*, at p. 173.) Neither of these cases was concerned with the question of which test would be used to determine the identity of issues.

12

defendant in the second suit may set up that judgment as a bar under the principles of res judicata.' " (*Ibid.*)

Appellant's federal action, in its final iteration, challenged "a mortgage transaction and its subsequent events" and sought a declaration of appellant's rights "under the Deed of Trust." As described by the district court, it arose "out of the initiation of non-judicial foreclosure proceedings on real property purchased by" appellant. The essential injury appellant claimed was that she was wrongfully subjected to foreclosure proceedings by defendants lacking authority to pursue foreclosure because of defective assignments of interests in the deed of trust.

The causes of action asserted in the present case are based on an alleged forcible entry into appellant's home and unauthorized removal of property. These claims are distinct from the foreclosure process and address a different primary right—an injury to appellant's right of possession separate from the right to title free from unlawful foreclosure. A "cause of action for trespass is designed to protect *possessory*—not necessarily ownership—interests in land from unlawful interference." (*Smith v. Cap Concrete, Inc.* (1982) 133 Cal.App.3d 769, 774.) Similarly, " ' "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. . . ." [Citation.]' [Citations.]" (*Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202, 208.) Because *Samson I* did not involve the same primary right as the present case, the trial court erred in finding res judicata applied based on the *Samson I* judgment.

*Samson II* did involve the same primary right as the present case, as appellant sought to amend her complaint to assert precisely these causes of action. *Samson II* also involved the same parties. Appellant correctly asserts, however, that *Samson II* did not result in a final judgment on the merits that could be given preclusive effect in the present case.

13

Under the California rule, a judgment "is not final for purposes of res judicata during the pendency of and until the resolution of the appeal." (*Agarwal, supra,* 25 Cal.3d at p. 954, fn. 11; *Wood v. Herson* (1974) 39 Cal.App.3d 737, 747; Code Civ. Proc., § 1049.) OneWest states—without citation to any authority—that there was a final judgment on the merits in *Samson II* when OneWest's demurrer was sustained without leave to amend as to the cause of action for wrongful foreclosure in the first amended complaint (the cause of action that alleged the forcible entry and taking of property) and also when its demurrer to the third amended complaint was sustained without leave to amend as to all causes of action. OneWest is incorrect.

An order sustaining a demurrer without leave to amend is not directly appealable; it can be reviewed only on appeal from an order of dismissal. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032; *Shank v. Los Gatos Associates* (1961) 193 Cal.App.2d 824, 828.) The trial court entered an order of dismissal in *Samson II* after sustaining the demurrer to the third amended complaint. But since appellant appealed from this order, as just stated, it was not final for purposes of res judicata during the trial court proceedings in the present case. (*Agarwal v. Johnson, supra,* 25 Cal.3d at p. 954, fn. 11; *Wood v. Herson, supra,* 39 Cal.App.3d at p. 747; Code Civ. Proc., § 1049.)[6]

OneWest argued in the trial court that the earlier order in *Samson II*, sustaining without leave to amend the demurrer to the wrongful foreclosure action in the first amended complaint, resulted in a final judgment because appellant waived her right to appeal that order by filing her second amended complaint. When a demurrer is sustained *with* leave to amend and the plaintiff chooses to amend the complaint, this choice generally waives any error in the sustaining of the demurrer. (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312.) But this rule applies "on a *cause-of-action-by-cause-of-action basis.* If a plaintiff chooses not to amend one cause

---

[6] Further statutory references will be to the Code of Civil Procedure unless otherwise specified.

14

of action but files an amended complaint containing the remaining causes of action or amended versions of the remaining causes of action, no waiver occurs and the plaintiff may challenge the intermediate ruling on the demurrer on an appeal from a subsequent judgment. It is only where the plaintiff amends the cause of action to which the demurrer was sustained that any error is waived." (*Ibid.*) Under Code of Civil Procedure section 472c, subdivision (b), "[t]he following orders shall be deemed open on appeal where an amended pleading is filed after the court's order: [¶] (1) An order sustaining a demurrer to a cause of action within a complaint or cross-complaint where the order did not sustain the demurrer as to the entire complaint or cross-complaint."

As there was no final judgment in *Samson II* while the present case was before the trial court, the trial court erred in finding the present case barred by res judicata on the basis of *Samson II*.

**III.**

OneWest sought sanctions in the amount of $18,424, based on its attorneys' fees for work on the motion for judgment on the pleadings and motion for sanctions and anticipated work if these motions were opposed. The court awarded $2,680.50, the amount of the attorneys' fees for just the sanctions motion.

Under section 128.7, "[b]y presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading petition, written notice of motion or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, . . . [¶] [i]t is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" (*id.*, subd. (b)(1)), the legal contentions "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" (*id.*, subd. (b)(2)), the allegations and factual contentions have evidentiary support or are likely to have such support after a reasonable opportunity for further investigation (*id.*, subd (b)(3)), and denials of factual contentions are warranted by the evidence (*id.*, subd. (b)(4)). The court may "impose an appropriate sanction" if it

15

determines, after notice and a reasonable opportunity to respond, that subdivision (b) has been violated. (*id.*, subd. (c).) We review the court's award of sanctions under an abuse of discretion standard. (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167.)

Section 128.7 contains a "safe harbor" provision. (*Banks v. Hathaway, Perrett, Webster, Powers & Chrisman* (2002) 97 Cal.App.4th 949, 953.) A motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense contention, allegation, or denial is not withdrawn or appropriately corrected." (§ 128.7, subd. (c)(1).) "The purpose of the 30-day safe harbor provision is to permit the 'offending party to avoid sanctions by withdrawing the improper pleading during the safe harbor period. [Citation.] This permits a party to withdraw a questionable pleading without penalty, thus saving the court and the parties time and money litigating the pleading as well as the sanctions request.' (*Malovec v. Hamrell* [(1999)] 70 Cal.App.4th [434,] 441; see *Hart v. Avetoom* (2002) 95 Cal.App.4th 410, 414-415 [96 Cal.App.4th 442b] [sanctions improper where sanctions motion filed after case dismissed and motion filed was different from motion served; 'new and improved' sanctions motion violated 30-day safe harbor requirement].)" (*Banks*, at p. 953.)

Additionally, under section 128.7, subdivision (d)(1), "[m]onetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b)."

Appellant filed her complaint in the present case in pro. per.; her attorney did not substitute into the case until August 5, 2014, the same day the sanctions motion was filed. She argues, however, that she is entitled to the protection of section 128.7, subdivision (d)(1), because OneWest's attorney was notified on or before July 10, 2014, that she was represented for purposes of settlement and because counsel in the present case were aware that appellant's attorney was attorney of record for the appeal in *Samson II*. The trial court found that appellant did not fall within the exception of section 128.7, subdivision (d)(1), because she was self-represented at the time the complaint was filed, the sanctions motion was served, and the 21-day safe harbor period expired. This

16

conclusion was correct. Since "[t]he purpose of section 128.7 is to deter frivolous filings" (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 133), and appellant was self-represented at the time the complaint was filed and during the safe harbor period in which it could have been withdrawn without penalty, it was appellant's own conduct that was subject to sanction if in fact sanctions were appropriate.

The trial court awarded sanctions because it found the complaint was not warranted by existing law or a reasonable extension of existing law in that appellant's claims were barred by res judicata. As we have explained, this conclusion was incorrect: *Samson I* involved a different primary right than the trespass and conversion claims appellant asserted in the present complaint, and the judgment in *Samson II* was not final because the case was on appeal. As this was the only basis the court stated for imposing sanctions, the order cannot stand. (See *Guillemin v. Stein, supra,* 104 Cal.App.4th at p.167.)

In light of this conclusion, we need not address appellant's additional challenges to the sanctions order.[7]

In her trial court brief opposing OneWest's sanctions motion, appellant asked the court to impose sanctions on OneWest and its attorneys pursuant to section 128.7, subdivision (c)(1), on the ground that OneWest's sanctions motion against appellant was

_____

[7] Appellant argues that OneWest improperly advanced an argument in its reply that was not presented in its motion for sanctions—that res judicata applied despite appellant having appealed the judgment in *Samson II* because appellant waived her right to challenge the demurrer to the cause of action that was sustained without leave to amend by failing to immediately seek review of that ruling and instead amending the complaint. OneWest urges that its reply did not raise a new issue but only responded to appellant's assertion, in her opposition to the motion for sanctions, that there was no final judgment in *Samson II* because the judgment was on appeal.

Appellant also argues the notice of motion did not indicate the place of service as required by section 1013, subdivision (d). OneWest maintains that it was sufficient for the proof of service to indicate, as it did, that the document was deposited with FedEx for overnight delivery ("deposited in a box or other facility regularly maintained by FedEx, or delivered to a courier or driver authorized by said express service carrier to receive documents").

unreasonable. Appellant urged that OneWest's motion did not identify what causes of action in the prior case its res judicata claim was based on or acknowledge that the prior action was not final because it was on appeal. Appellant also argued that the motion appeared to have been intended to cause appellant to drop her appeal in *Samson II* in that when the motion was served, OneWest's counsel was aware that appellant's counsel was working on the opening brief on the appeal because appellant's counsel had requested an extension of time to file the opening brief a few days before. Appellant sought sanctions of $3,500, based on the amount of her attorney's fees for opposing the OneWest's sanctions motion.

OneWest did not respond to appellant's request for sanctions in the trial court and the court did not address it.[8] As OneWest points out, appellant did not follow the required procedure for seeking sanctions under section 128.7, subdivision (c)(1), as she did not file a separate motion for sanctions and then wait 21 days before filing the motion. Appellant maintains the safe harbor requirement does not apply because she is not pursuing a separate motion for sanctions but rather relying upon the provision of section 128.7, subdivision (c)(1), that "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting *or opposing* the motion." (Emphasis added.) Noting that the trial court did not reach this issue because it granted OneWest's request for sanctions, making OneWest the prevailing party, appellant argues that if we reverse the trial court's order, we should award her attorney's fees as a sanction against OneWest for filing a frivolous motion. (*Musaelian v. Adams* (2011) 197 Cal.App.4th 1251, 1257-1258 [award of attorney's fees for opposing

---

[8] Appellant's opposition brief was 19 pages long. At the hearing on OneWest's motion for sanctions, the court stated that it had stricken the pages beyond 15 because the brief exceeded the 10-page limit, noting that it could have stricken the pages beyond 10. The court limited appellant's attorney's argument to what was raised in the first 10 pages. Appellant's request for sanctions against OneWest began on page 14 of the opposition brief.

sanctions motion not "warranted" unless motion was frivolous or otherwise unreasonable].)

Although we have concluded the trial court erred in its determination of the res judicata issue, the fact that OneWest prevailed in the trial court shows OneWest's position was not frivolous.  (*Musaelian v. Adams, supra,* 197 Cal.App.4th at p. 1258.)

## DISPOSITION

The order imposing sanctions is reversed.  The judgment is otherwise affirmed.  Each party to bear its own costs.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Miller, J.