Filed 8/15/16  Samson v. OneWest Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARILOU D. SAMSON,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>ONEWEST BANK N.A. et al.,<br><br>　　　　Defendants and Respondents. | A139967<br><br>(San Francisco City and County<br>Super. Ct. No. CGC11515907) |

Appellant's home was sold at a foreclosure sale almost three years after a successor trustee recorded notice of default under the deed of trust securing her mortgage loan.  After the notice of default was recorded, appellant filed a lawsuit in federal district court challenging the validity of assignments of the deed of trust subsequent to her transaction with the original lender.  She was permitted to amend her complaint twice before the case was dismissed, then filed the present suit in state court.  The trial court granted leave to amend three times before ultimately dismissing the case soon after the home was sold.  Appellant contends the court erred in sustaining the demurrers to her first and third amended complaints, and in denying leave to file a fourth amended complaint.  We will affirm the trial court's judgment, albeit for reasons different from those relied upon below.

## STATEMENT OF THE CASE AND FACTS

On July 26, 2005, appellant borrowed $576,000 from Evergreen Lending, Inc. (Evergreen), secured by a deed of trust on the property located at 2574 31st Avenue, San Francisco, California, and subject to a promissory note and adjustable rate rider.

1

Evergreen was the beneficiary under the deed of trust. Alliance Title was the trustee. The deed of trust provided that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower."

Evergreen subsequently assigned its beneficial interest under the deed of trust to Mortgage Electronic Registration Systems (MERS) through an assignment notarized on December 1, 2006, and recorded on February 28, 2007. [1]

MERS later assigned its beneficial interest in the deed of trust to OneWest Bank FSB (OneWest) through an assignment dated July 26, 2010, notarized on August 25, 2010, and recorded on September 1, 2010.

By a substitution of trustee document dated July 26, 2010, notarized on August 3, 2010, and recorded on November 4, 2010, OneWest substituted Meridian Trust Deed Service (Meridian) in place of Alliance as trustee under the deed of trust.

On July 27, 2010, a Notice of Default and Election to Sell Under Deed of Trust was recorded by Meridian Foreclosure Service on behalf of OneWest. The notice stated an amount due of $49,173.48 as of July 26, 2010.

On August 18, 2010, OneWest executed an assignment of its beneficial interest under the deed of trust to "U.S. Bank National Association [(U.S. Bank)], as Trustee for the LXS 2005-5N" (LXS Trust), [2] which was notarized on August 23, 2010, and recorded on July 22, 2011.

---

[1] An undated allonge to the promissory note shows it was endorsed to IndyMac Bank, F.S.B. by the president of Evergreen and endorsed by a vice president of IndyMac.

[2] Appellant cites to the October 28, 2005 supplement to a September 26, 2005 prospectus titled "$2,740,586,000 (Approximate) LEHMAN XS TRUST Mortgage Pass-Through Certificates, Series 2005-5N." The prospectus describes U.S. Bank as the trustee; Aurora Loan Services, LLC (Aurora) as the master servicer of the mortgage loans; and IndyMac Bank, F.S.B., and Countrywide Home Loans Servicing, LP as the originators of the mortgage loans to be included in the fund, with each of these entities servicing the loans originating from that entity, 69.84 percent and 30.16 percent of the total loans respectively.

According to allegations in appellant's first amended complaint, she was never told that her monthly loan payments would increase from the $1,854 she paid Evergreen. She began having trouble making her loan payments after the assignment to MERS, when the payments increased to $2,200, and to OneWest, when they increased to $3,954. She applied for a loan modification and "[t]he Loan Modification has been going on without any conclusive results." On appeal she asserts that the loan modification was denied and respondents "continued to solicit and deny loan modifications from earlier 2010 to 2013."

On October 25, 2010, appellant, in propria persona, filed in federal district court a "Complaint Under Securities Exchange Act of 1934 – Churning of Account and Related Counts"[3] against OneWest, Aurora Loan Services, LLC (Aurora),[4] JPMorgan Chase, IndyMac Mortgage Services, Evergreen and MERS (*Samson I*). Appellant alleged various causes of action related to the securitization and assignment of the deed of trust and to alleged mishandling of "securities," including "shares of stock in Fidelity Investments," in her "brokerage account," as well as violations of federal securities laws and causes of action for conspiracy and for recission of the deed of trust.

On November 23, 2010, appellant filed a voluntary petition in bankruptcy under chapter 13 of the federal Bankruptcy Act.

On February 18, 2011, the federal district court granted Aurora's motion to dismiss the complaint with leave to amend.[5]

---

[3] In this context, "churn" means "to make (the account of a client) excessively active by frequent purchases and sales primarily in order to generate commissions" (Merriam-Webster.com)

[4] As subsequently described to the court, Aurora was the "master servicer" for the loan (see fn. 2, *ante*), a "go-between between the actual servicer who's dealing with the borrower and the owner of the loan . . . for administrative purposes."

[5] The court ruled that appellant lacked standing to sue under the federal securities laws specified in the complaint; that these claims failed because appellant failed to separately plead the required scienter against defendant; that appellant lacked standing for several of the counts because the cited statutes did not provide for private causes of action; and that the claim for recission failed because appellant did not allege tender of the full amount due under her loan.

3

Appellant filed a first amended complaint on March 17, 2011, alleging causes of action for fraud, breach of duty to disclose, breach of duty to be honest and truthful, negligence and negligent misrepresentation. The general allegations included that the defendants failed to give her required notice of changes in the amount of her monthly loan payments before the effective date of the change, interfered with her right to "renegotiate the debt as provided in the Deed of Trust in dispute" and "did not in fact allow [her] to cure the default if she has any at all." The causes of action were based mainly on the securitization of the deed of trust and allegedly unauthorized assignments.

On July 21, 2011, the bankruptcy court granted OneWest's motion for relief from the automatic bankruptcy stay, permitting OneWest and its successors and assigns to foreclose upon and sell the property.

On July 28, 2011, the federal court granted Aurora's motion to dismiss the amended complaint, dismissing the causes of action for fraud and negligent misrepresentation with leave to amend and the other causes of action with prejudice.[6] Noting that no summonses had been issued and appellant had filed no proof of service for any defendant other than Aurora, the court directed appellant to file proof of service on the other defendants by August 8, stating they would be "dismissed under Federal Rule of Civil Procedure 4(m)" if she did not do so. The court later dismissed the defendants other than Aurora pursuant to Federal Rule of Civil Procedure 4(m) due to appellant's failure to file proof of service on these defendants as directed by the July 28, 2011 order.

Appellant filed her "Third Amended Complaint for Declaratory Relief" (actually her second amended complaint) on August 18, 2011. Her allegations concerned

---

We have granted respondent's request to take judicial notice of this and certain other federal court orders and documents filed in the federal district court and bankruptcy court. (Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.252.)

[6] Among other things, the court explained that appellant had not alleged any facts showing what misrepresentations had been made, by whom, when, and why they were fraudulent; had not alleged facts supporting an inference that Aurora had a fiduciary duty or breached a contractual obligation to her; and had not alleged that she did not default on the loan or was not notified of the default and action necessary to cure it.

4

misrepresentations regarding her mortgage interest rate, "discrepancies" with respect to the assignments of the deed of trust, and securitization of the original note. Appellant sought a declaration of the parties' rights and duties, and alleged causes of action for fraudulent misrepresentation, "churning" in violation of securities laws, and promissory estoppel/waiver.

On November 14, 2011, the federal court dismissed the second amended complaint with prejudice, explaining that appellant had not sought leave of court to add the securities law and estoppel claims; the court had previously ruled appellant lacked standing to assert a claim under the Securities Act; appellant had failed to plead fraud with particularity as previously directed; appellant had failed to allege any wrongdoing by Aurora; and further leave to amend would be futile.

The following day, November 15, 2011, appellant filed her complaint in the present case, titled "Complaint to Establish Deed as Mortgage and Quiet Title by Mortgagor" and naming OneWest and Meridian as defendants (*Samson II*). Appellant sought a declaration that title to the property was vested in her alone and the defendants had no right, title or interest in the property, and a judgment compelling the defendants to transfer title and possession to appellant, allowing appellant to deposit with the court whatever amount was adjudged due on the note, and adjudging the note fully paid.

OneWest demurred, arguing that appellant's complaint was barred by res judicata and collateral estoppel, her foreclosure-related claims and the parties' rights and duties under the deed of trust having been fully litigated in *Samson I.* OneWest also argued the claims were uncertain; appellant's allegations and documentation failed to show a valid tender of the amount due on the loan, a prerequisite for seeking relief from foreclosure; and other deficiencies in the allegations. Appellant asserted that res judicata did not apply because there was no decision on the merits in the federal action; her allegations were sufficient; she had alleged having offered to pay the full sum due; and, in any event, tender was not required because the trustee's deed was void. On May 15, 2012, the trial court sustained the demurrer with leave to amend "for Plaintiff to allege all elements of Quiet Title claim."

5

Appellant filed her first amended complaint on June 6, 2012, adding "US Bank National Association" as a third defendant and alleging causes of action for wrongful foreclosure, to void or cancel the assignment of the deed of trust, for injunctive relief under the Unfair Competition law (Bus. & Prof., § 17200 et seq.) and to quiet title. Appellant alleged that she became unable to afford her mortgage payments, which increased after the assignments to MERS and then OneWest; that she had applied for loan modification and that process was "going on without any conclusive results"; and, meanwhile, "Defendant trespassed on Plaintiff's property forcefully" by "drilling the front door locks" of the residence and the defendant's agents "robbed" appellant of "many of her valuables."[7] Meanwhile, among other additional claims, appellant alleged that the assignment from Evergreen to MERS was defective because the "original principal amount due" was left blank, as a result of which the subsequent assignments were also defective.

On June 13, 2012, Meridian recorded a "Notice of Trustee's Sale" for the property.

On July 10, 2012, OneWest and U.S. Bank, as trustee for the LXS Trust, filed a demurrer arguing that the new defendant and causes of action other than quiet title were added in violation of the order granting leave to amend; the complaint was barred by res judicata and collateral estoppel; appellant failed to allege a valid tender; the assignment to MERS was valid; and appellant failed to adequately plead her causes of action. Appellant again responded that there was no judgment on the merits in *Samson I*, she had offered a valid tender or no tender was required, and her allegations were sufficient.

On November 28, 2012, the bankruptcy court filed its order confirming appellant's bankruptcy plan.

On December 21, 2012, the trial court sustained the demurrer without leave to amend as to the causes of action for wrongful foreclosure, to void the assignments, and

_____

[7] This entry was alleged to have occurred in August 2011. Later, in her motion for a new trial, appellant represented that the correct date was August 20, 2010.

6

for unfair competition because appellant "failed to show any possibility of successful amendment" and granted appellant leave to amend the quiet title cause of action.

Appellant's second amended complaint, filed on December 28, 2012, named the original two defendants and set forth a cause of action to quiet title. The factual allegations were virtually identical to those of the first amended complaint, the allegations comprising the cause of action for quiet title combining those that in the first amended complaint had been contained in the causes of action for wrongful foreclosure and quiet title. Respondents demurred, arguing that appellant had not cured any of the previously identified defects in the complaint.

Appellant's opposition to the demurrer began with a lengthy "Introduction" composed of denials and assertions, primarily "[u]pon information and belief," detailing appellant's view that the defendants' lacked any interest in or authority to enforce the loan, including assertions that the defendants had "admitted" the note was not in default and that MERS, in effect, was a non-entity.[8] Appellant then set forth the identical responses she had previously offered regarding the defendants' res judicata and tender arguments and argued that her allegations were sufficient to state the cause of action to quiet title and explain the "irregularities" in assignment of the loan.

Appellant filed her third amended complaint for quiet title against OneWest, Meridian and US Bank on May 2, 2013. She alleged that the promissory note she originally gave to Evergreen was a negotiable instrument as defined by the Commercial Code, that no defendant had provided proof of authority to enforce the note, no default had occurred, the deed of trust no longer secured performance of an obligation due from appellant and the deed of trust was a cloud on title of the property belonging to appellant. Appellant alleged that the defendants' "statements and conduct" were "effectively

---

[8] Appellant stated, "Upon information and belief, Mortgage Electronic Registration Systems, Inc. (MERS) has no employees, no revenue, no assets of any consequence, no business operations, no electronic data system that tracks real estate loans in America, and no economic or beneficial interest in any note, mortgage, or deed of trust."

7

admissions that none of these defendants" had any right to enforce the note or deed of trust and none of them had any interest in the property superior to appellant, and that any action taken by MERS was void because MERS had no direct interest in the note and deed of trust or agency relationship regarding such interests.[9] Appellant sought to quiet title against the defendants and others as to any interests in the property adverse to her title, and alleged that defendants known and unknown asserted claims inconsistent with her rights in the property.

On May 16, 2013, the property was sold to a third party at a trustee's sale.

Respondents filed demurrers to the third amended complaint on June 6, 2013. They argued that appellant had offered only vague and conclusory assertions based on information and belief that no defendant was entitled to enforce the note; that the quiet title claim could not succeed because appellant had not denied she borrowed the money or claimed to have repaid it; that appellant had not alleged any irregularity in the completed foreclosure, the California Commercial Code did not apply to non-judicial foreclosures, and appellant had not otherwise specifically identified any adverse claim of a defendant to support her quiet title claim; and that the action was barred by res judicata due to the dismissal of *Samson I*.

Appellant argued it was improper for respondents to challenge her lawsuit because in selling the property they "sold whatever rights they have," repeated her argument that there was no judgment on the merits in *Samson I*, and argued that tender was not required because the validity of the debt was in issue and that her allegations met minimum pleading requirements.

On August 7, 2013, the trial court sustained the demurrers without leave to amend, its order stating that appellant failed to allege all elements of the claim, "specifically defendants' adverse claims to title, and failed to tender amounts owed under the note

---

[9] Appellant reiterated her allegations that MERS had "no employees, no revenue, no assets of any consequence, no business operations, no electronic data system that tracks real estate loans in America, no economic or beneficial interest in any mortgage loan note or mortgage, and no members." (See fn. 11, *post.*)

secured by Deed of Trust."  At the hearing, the court also noted that the case was barred by res judicata.

Appellant filed a motion for a new trial on August 27, 2013, arguing that the trial court erred in denying her leave to amend because additional facts had occurred after the third amended complaint was filed—the trustee sale.  She urged that she should be allowed to amend the complaint to allege tender, as well as that tender was not required because the sale was void, and offered a new argument that Meridian did not have authority to execute the notice of default on July 27, 2010, because the substitution of trustee by which it was appointed was executed on August 3, 2010; MERS did not have authority to authorize the notice of default and did not do so; and OneWest did not become the beneficiary until MERS transferred its interest to OneWest on August 25, 2010, and recorded the transfer on September 1, 2010.[10]  Appellant argued that she was prejudiced by the assignment of the deed to MERS in "not being able to identify the lender, the investor/beneficiary not being as willing to negotiate a loan modification, the 'investory' or bank's agents under MERS breaking into her home on August 20, 2010, to take possession of the property" and "the notice of default [being] sent without authority,"  as well as that the underlying debt was "nonenforceable due to fraud" and tender was not required because "the trustee sale and the foreclosure procedure was conducted without authority."  She further argued that due to her allegations of unlawful entry into her home, she "would be able to assert causes of action for trespass, conversion and violation of her rights under state and federal law under Civil Code [section] 52.1" and "should be able to assert a cause of action to cancel the deed assignment or the trustee deed" due to the trustee's unauthorized action and "should be able to state a cause of action of violation under California Business and [P]rofessions [C]ode section 17200 et seq."

---

[10] As described above, both the assignment by which OneWest acquired its interest from MERS and the substitution by which OneWest appointed Meridian were dated July 26, 2010, although the documents were notarized and recorded on subsequent dates.

9

Respondents argued that appellant had not identified any legal error and the new allegations she proposed would not support a cause of action and (for the most part) were improperly raised for the first time on the new trial motion. Among other things, respondents noted that while the trustee sale occurred after appellant filed her third amended complaint, it occurred before they filed their demurrers and was considered by the court in ruling on them.

The new trial motion was denied on October 1, 2013. The court stated, "Plaintiff failed to carry her burden under CCP 657(7). Plaintiff was given 4 opportunities to allege a viable cause of action against named defendants. Plaintiff concedes the property was sold to a non-party."

Appellant, now represented by counsel, filed a timely notice of appeal on October 7, 2013.

## DISCUSSION

Appellant seeks reversal of the trial court's order sustaining the demurrer to the third amended complaint and dismissing the action, and also of the order sustaining the demurrer to the first amended complaint without leave to amend as to several causes of action.[11] The majority of her briefing is directed toward establishing that she can state a cause of action for wrongful foreclosure. In addition, she asserts that she can state valid causes of action for trespass, conversion, intentional infliction of emotional distress,

---

[11] Appellant's notice of appeal states, "The appeal includes order sustaining the demurrer to the third amended complaint and sustaining the demurrer without leave to amend, as well as sustaining the first, second and third causes of action to the first amended complaint and sustaining the same without leave to amend."

In her opening brief on this appeal, appellant argues that the trial court abused its discretion in "sustaining the demurrer to the first amended complaint without leave to amend as to the causes of action for wrongful foreclosure, unfair business practices, conversion, trespass, cancellation of the assignments of the deed of trust and other causes of action in the first amended complaint." The only causes of action that appeared in the first amended complaint, however, were for wrongful foreclosure, cancellation of the assignment of the unfair business practice, and quiet title.

Appellant is entitled to seek review of the ruling on the first amended complaint as well as the third. (Code Civ. Proc., § 472c.)

10

negligence, breach of contract, violation of Civil Code section 52.1,[12] "cancellation of the deed," "to set aside the trustee sale," unfair business practice (Bus. & Prof. Code, § 17200), unjust enrichment, fraud, negligent misrepresentation, negligent loan modification and quiet title.[13]

Appellant's fundamental theory is that the trustee sale (and, presumably, the preceding steps leading to the sale) is void because it was initiated by a party lacking authority to conduct it. In appellant's view, the original assignment of the deed of trust from Evergreen to MERS as beneficiary, and all subsequent assignments, were void because they did not occur within the time period allowed by the Trust Agreement for the LXS Trust of which the mortgage became a part. (See *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1082.) Additionally, appellant argues, the original assignment from Evergreen to MERS was void because MERS was not identified in the deed of trust as the nominee of the beneficiary, and because that assignment was void, all subsequent assignments—to successor beneficiaries and to Meridian as trustee—were necessarily void.

Beyond this starting point, in support of her wrongful foreclosure claim, appellant argues that because the trustee sale is void, there is no requirement that she tender the balance due on her loan, and that before the sale was completed it would have been unfair to require a tender because she could have avoided the sale if her claims had not been denied. Appellant argues that she was prejudiced in that her ability to avoid foreclosure was impeded by the "failed securitization of the loan," the assignment to MERS and the wrongful entry into her home.[14] The same factual predicate—invalid assignments and

---

[12] Further statutory references will be to the Civil Code unless otherwise specified.

[13] Appellant has not previously attempted to allege, or sought leave to amend to allege, a number of these causes of action in this case: infliction of emotional distress, negligence, breach of contract, unjust enrichment, fraud, negligent misrepresentation, negligent loan modification.

[14] Appellant argues that the wrongful entry resulted in her installing a security system and purchasing a guard dog, and the loss of her personal property during the entry reduced her income and ability to repair defects in the home that affected habitability and

failed securitization of the deed of trust and wrongful entry into her home—underlies appellant's other claims, along with assertions that the defendants repeatedly denied her applications for loan modification but encouraged her to reapply without revealing that modification was "barred or very unlikely due to the securitized trust agreement" and that the defendants could not modify the loan "[d]ue to the failed securitization" and, as a result, denied modification for false or deceptive reasons. Much of appellant's argument on these claims is conclusory and undeveloped.

"When reviewing a court's dismissal of a lawsuit following an order sustaining a demurrer without leave to amend, we initially review the complaint de novo to determine whether, as a matter of law, the complaint alleges a valid cause of action. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 . . . .) We assume the truth of all properly pleaded and judicially noticeable material facts within the complaint, but we do not assume ' " ' "contentions, deductions or conclusions of fact or law." ' " ' (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 . . . .)" (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506-507, overruled on other grounds in *Yvanova v. New Century Mortgage Co.* (2016) 62 Cal.4th 919, 939, fn. 3.) "If the facts appearing in [an] attached exhibit contradict those expressly pleaded, those in the exhibit are given precedence. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1626-1627.)" (*Mead v. Sanwa Bank California* (1998) 61 Cal.App.4th 561, 567-568.)

"If the trial court sustains a demurrer without leave to amend, we determine whether or not plaintiffs could amend the complaint to state a cause of action. (*Curcini* [*v. County of Alameda* (2008) 164 Cal.App.4th 629], 637.) The plaintiffs bear the burden of proving the trial court abused its discretion in denying leave to amend. (*Leonard v.*

---

her ability to rent part of the home. The securitization of the loan, she urges, made it more difficult to obtain a modification of the loan because of terms of the Trust. The assignment to MERS, which appellant maintains violated the terms of the deed of trust, "made the loan more valuable to the lender and less valuable to the borrower" and "was designed to conceal the violation of New York law, which would have an adverse impact on the trust."

*John Crane, Inc.* (2012) 206 Cal.App.4th 1274, 1282, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)" (*Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 925-926.) To do so, "the plaintiff must demonstrate how the complaint can be amended. ([*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967].) While such a showing can be made for the first time to the reviewing court (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386), it must be made." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.) "Absent an effective request for leave to amend the complaint in specified ways, an abuse of discretion can be found ' "only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case." [Citation.]' (*Ibid.*)" (*Jenkins v. JPMorgan Chase Bank, N.A., supra,* 216 Cal.App.4th at pp. 506-507.)

## I.

Respondents argue in support of the judgment that all of appellant's causes of action are barred by res judicata because they were or could have been litigated in the federal action; that all the causes of action are barred under the doctrine of judicial estoppel because appellant failed to disclose them in her bankruptcy case; and that most of appellant's proposed causes of action fail on the merits. We find the second of these arguments dispositive and therefore have no need to address the others.

"The concept of judicial estoppel prevents a party from asserting a position in a judicial proceeding that is contrary or inconsistent with a position previously asserted in a prior proceeding. The purpose is to protect the integrity of the judicial process and not the parties of the lawsuit." (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 350 (*International Engine*).) Judicial estoppel "is a doctrine invoked by courts in their discretion" (*id.* at p. 351) and "an extraordinary remedy that should be applied with caution." (*Kelsey v. Waste Management of Alameda County* (1999) 76 Cal.App.4th 590, 598.) " '[T]he doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are

13

totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.  [Citations.]' " (*International Engine,* at p. 351, quoting *Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

"It is a long-standing tenet of bankruptcy law that one seeking the benefits of protection under the bankruptcy law has a concomitant duty to disclose to the creditors all of the debtor's interests and property rights without limitation.  (*Oneida Motor Freight, Inc. v. United Jersey Bank* [(3rd Cir. 1988)] 848 F.2d [414,] 416.)" (*International Engine, supra,* 64 Cal.App.4th at p. 351.)  "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." (*Burnes v. Pemco Aeroplex, Inc.* (11th Cir. 2002) 291 F.3d 1282, 1286.)  "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system.' " (*Ibid.*, quoting, *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.* (3d Cir.1996) 81 F.3d 355, 362.)  Therefore, "[i]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." (*Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, 783 (*Hamilton*).)  "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." (*Id.* at p. 784.)

As indicated above, on November 23, 2010, a month after filing the initial complaint in *Samson I,* appellant filed a voluntary petition in bankruptcy under chapter 13 of the federal Bankruptcy Act.  The bankruptcy court confirmed her chapter 13 plan on November 28, 2012, and appellant was granted a discharge on May 20, 2016.  Respondents urge that because appellant did not disclose the present case in the bankruptcy proceedings, she is precluded from asserting her claims in the present action.

Appellant did not mention a state lawsuit against respondents in the Summary of Schedules she filed in bankruptcy court on December 28, 2010.  Her only references to

14

the subject matter of the present case were the listing on her December 28, 2010, Schedule F (Creditors Holding Unsecured Claims) of OneWest as creditor for "11/29/2010 No Holder in Due Course, Fictitious Lender" in the amount of $676,132.24, which was the amount listed on the notice of trustee sale setting a November 29, 2010, sale date, and the listing on her December 28, 2010, Schedule B of "stolen items from above property 2574 31st Ave., SF., CA 94116," with a value of $25,000. Neither of these items suggested the possibility of a lawsuit in state court against OneWest.

Appellant also did not list her state claims against respondents in the Amended Schedule B filed on July 18, 2011, which did list several other lawsuits. Amended Schedule B listed "Insurance claim for home burglary - items stolen include printers used in business, household items, jewelry and collectibles, building materials for home improvements. [¶] Recovery contingent on production of inventory of items and receipts and insurance company approval." This item indicated a potential insurance payment, not potential damages from a lawsuit.

In a Schedule B filed on October 4, 2011, appellant listed "Potential recovery from pending lawsuit Samson v. OneWest Bank et al.," indicating the requested damages were $576,000 and "[v]aluation of the claim is highly speculative." This can only be a reference to the federal case: Appellant's first complaint in that case was the only one in which she sought 576,000 damages, and the state case was not filed until November 2011. Schedule D (Creditors Holding Secured Claims) of the October 4, 2011, filing listed Evergreen, Aurora, OneWest, and IndyMac Mortgage Services as creditors for the July 26, 2005, deed of trust, in the amount of $576,000, and Schedule F in this filing no longer included OneWest as an unsecured creditor.

Appellant maintains that she *did* disclose her state law claims, characterizing respondents as claiming she "disclosed the 'lawsuit' but did not set forth the cause of action." But respondents' argument is that appellant failed to disclose the *state* court case at all, which from our review of the documents we have been provided appears to be the case. Appellant does not point to any bankruptcy court filing mentioning a potential state court claim against respondents. Nor does she explain the basis for her statement that it

15

is "clear that [she] disclosed her claim." Her assertion on this appeal that the "nature of her claim became clearer over time" because respondents continued to deny her applications for loan modifications is disingenuous: Based on the dates listed in her brief, several loan applications had been denied before she filed the state court case and, in any event, the primary basis of her foreclosure related claims—that respondents lacked authority to foreclose—was unchanged from the outset. The facts underlying her state claims, including those for trespass and conversion, occurred even before the federal case was filed, yet appellant did not disclose the state lawsuit even after she filed it.

At oral argument, appellant's attorney represented that appellant, acting in pro. per., advised the bankruptcy court of the state case at a hearing in July 2012. The July 6, 2012 bankruptcy court hearing was on appellant's motion to vacate that court's July 21, 2011 order lifting the automatic stay. Counsel directed us to an entry in the bankruptcy court's docket (included in the clerk's transcript for a related appeal, *Samson v. OneWest Bank et al.* (A144526), of which we take judicial notice) indicating the existence of a "PDF with attached Audio File" for the July 6, 2012, hearing. Counsel stated that he had not been able to obtain this file, but that it would reveal what was said at the hearing. We have obtained the audio recording from the bankruptcy court and have taken judicial notice of it. Seeking to have the bankruptcy court vacate the order lifting the stay—in order to prevent OneWest from proceeding with the foreclosure sale then scheduled for the following week—appellant argued that OneWest was not the holder of the loan; the court explained that the stay had been lifted because appellant had not met the obligation imposed by the bankruptcy court to make payments on the loan, an issue entirely separate from her challenges to the validity of the assignments of the loan. Appellant did not mention anything about a state court action.

Appellant has offered us no other indication that she disclosed her state court claims at any time during the pendency of the bankruptcy proceeding.

In *Hamilton, supra,* 270 F.3d 778, Hamilton filed an insurance claim for damage and loss he attributed to tenants he had just evicted from a house he owned. Suspecting Hamilton was responsible for the losses, the insurer investigated, then denied the claim a

16

few days after Hamilton had filed for chapter 7 bankruptcy. On his bankruptcy schedules, Hamilton listed a vandalism loss against his estate but did not list any claim against the insurer as an asset. After the bankruptcy court discharged Hamilton's debts, the trustee noticed the large vandalism loss and requested information from Hamilton that the latter did not provide. The trustee moved to dismiss the bankruptcy based on bad faith, lack of truthfulness under oath and failure to cooperate, and the court dismissed the bankruptcy. (*Id.* at pp. 780-781.) A few months later, Hamilton sued the insurer for breach of the covenant of good faith and fair dealing and breach of contract. (*Id.* at p. 781.) The trial court granted summary judgment in part on the basis of judicial estoppel, and the Ninth Circuit affirmed. (*Id.* at pp. 782, 786.) The court held that Hamilton had asserted inconsistent positions by failing to list his claims against the insurer on his bankruptcy schedules and that the bankruptcy court had relied upon the nondisclosure even though the bankruptcy was subsequently discharged. (*Id.* at p. 784.) Hamilton was precluded from pursuing the undisclosed claims because he "knew of all the material facts surrounding the damage to the house and [the insurer's] investigation and denial of his claim at the time he filed his bankruptcy schedules and for many months before pursuing legal action." (*Id.* at p. 785.)

The *Hamilton* court explained that it "invoke[d] judicial estoppel to protect the integrity of the bankruptcy process. The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets." (*Hamilton, supra,* 270 F.3d at p. 785.) The duty to disclose includes " '*contingent and unliquidated claims*,' " and the debtor's duty to disclose, as we have said, "continues for the duration of the bankruptcy proceeding." (*Ibid.*) " 'The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the

17

debtor is incomplete.' " (*Ibid.*, quoting *In re Coastal Plains, Inc.* (5th Cir. 1999) 179 F.3d 197, 208, italics added.)

*Hamilton v. Greenwich Investors, XXVI, LLC* (2011) 195 Cal.App.4th 1602, which applied these principles in the context of a lender liability suit, held that the trial court properly sustained a demurrer without leave to amend based on judicial estoppel because the debtor had failed to disclose a claim against one of his principal creditors despite the bankruptcy schedules expressly asking for counterclaims and rights to setoff claims. (*Id.* at pp. 1609, 1613.) Because the events underlying the claim occurred before the debtor filed for bankruptcy, the debtor "must have known of the facts allegedly justifying the claim." (*Id.* at p. 1614.)

There can be no question appellant knew she had a duty to disclose lawsuits in her bankruptcy schedules and knew her duty to disclose continued throughout the pendency of the bankruptcy proceedings. This is evident from her bankruptcy court filings. After her initial filing, which mentioned only a "settlement on lawsuit" with payment "contingent on judgment," she filed an amended Schedule B in July 2011, adding two pending lawsuits, as well as the entry of judgment in the previously listed settlement. She then filed another amended Schedule B in October 2011, adding the then-pending suit in *Samson I.* Appellant is not entitled to recover damages now that should have been taken into consideration by the bankruptcy court for the benefit of her creditors. Having failed to disclose her potential legal claims during the course of the bankruptcy proceedings, she is precluded from asserting them now.

We recognize that "determination of the existence of judicial estoppel is a factual finding" (*International Engine, supra,* 64 Cal.App.4th at p. 354) generally ill-suited to this court, and that respondents have raised the issue for the first time on appeal. Respondents have supplied us with various records from the bankruptcy proceedings, however, of which we have taken judicial notice. Appellant has offered additional documents which we have also judicially noticed, and we have taken judicial notice of the record in *Samson v. OneWest Bank et al.* (A144526), which includes documents from the bankruptcy court file. The parties have been afforded a full opportunity to address the

18

judicial estoppel issue in briefs and at oral argument, and to present any further relevant documentation.  No further factual question has been identified.

We conclude appellant's present claims are barred.

**DISPOSITION**

The judgment is affirmed.

Each party to bear its own costs.

_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Miller, J.